**UNITED STATES of America,**

v.

**Robert David VILLARD.**

**Crim. No. 87–326.**

United States District Court,
D. New Jersey.

Nov. 29, 1988.

---

Samuel Alito, Jr., U.S. Atty. by Howard Weiner, Asst. U.S. Atty., Camden, N.J., for plaintiff.

Roger Jon Diamond, Hecht, Diamond & Greenfield, Pacific Palisades, Cal., for defendant.

## OPINION

RODRIGUEZ, District Judge.

### I. INTRODUCTION

This opinion addresses the novel issue of whether a defendant was properly convicted of transporting child pornography across state lines, where the jury did not have the benefit of viewing the visual depictions in question. To paraphrase an old adage, this court must decide whether somewhat less than a thousand words (in the form of testimony by a government witness) can take the place of a picture.

### II. FACTS AND PROCEDURAL HISTORY

On September 3, 1987, a federal Grand Jury indicted Robert David Villard on three counts. Count One alleged that on July 23, 1984, Villard transported a videocassette from New Jersey to California which visually depicted "a minor male engaging in the lascivious exhibition of his genitals and pubic area" in violation of 18 U.S.C. § 2252(a)(1). This charge stemmed from a trip made by Villard in 1984 from his home in Van Nuys, California to New Jersey for the purpose of visiting Henry Feltman, who later became a government informant.

Feltman testified at trial that prior to Villard's 1984 visit, Feltman made a videotape of a minor male in various poses, some of which included nudity and some of which depicted the minor male with a partial erection. *See* Trial Testimony of Henry Feltman, March 16, 1988 at 4–19. The government sought to demonstrate at trial that during his 1984 visit to New Jersey, Villard copied portions of this videotape and then took the copied portions back to California.

Count Two charged that on November 14, 1986, Villard transported from California to New Jersey three magazines and the front and back cover of a fourth magazine, all of which depicted "minor males engaging in lascivious exhibition of their genitals and pubic areas," also in violation of 18 U.S.C. § 2252(a)(1). Count Three involved the same materials as Count Two, and alleged that on November 16, 1986, Villard returned to California with those materials.

Prior to trial, defendant moved to dismiss the indictment on the grounds that the Grand Jury had never reviewed the allegedly pornographic materials upon which the charges were based. The court denied that motion. Defendant also moved to sever Count One from Counts Two and Three. That motion was also denied.

Trial commenced before a jury on March 15, 1988. At the close of the government's case, defendant moved for a judgment of acquittal on all counts. With respect to Count One, the government was unable to produce the original videotape which Feltman had created in 1984 of the minor male. Nor was the government able to produce the portions of that videotape which Villard had allegedly copied and transported from New Jersey to California. Consequently, the government sought to rely on testimony by Feltman which indicated that Villard had viewed the entire videotape in New Jersey and had expressed a greater enjoyment of those portions in which the minor male had appeared in the nude. However, the only evidence that specific portions of the videotape had been copied by the defendant was a reference by Villard in 1986 to the fact that he had duplicated two small segments of the video in 1984. Govern-

ment Exhibit 33, Transcript of F.B.I. surveillance tape at 652–33–5. While there was some indication that the duplicated segments had contained nudity, *Id.* at 648-33–2, 3, it was impossible for the jury to identify a specific visual depiction which the defendant had transported to California in violation of federal law. Therefore, the government argued that the jury should be permitted to determine first, whether any specific portions of the original videotape constituted child pornography (the original videotape had been described to the jury by Feltman, who had produced it; the minor male had also testified as to his involvement in the making of the video) and second, whether the duplicated portions of the tape which Villard transported to California contained pornographic depictions, without specifying which one.

In light of the inability of the jury to determine that a specific video depiction was pornographic and had been transported to California in violation of federal law, the court granted defendant's motion to enter a judgment of acquittal on Count One.

The court reserved judgment on the defendant's motion for a judgment of acquittal on Counts Two and Three. Four items formed the basis of the government's allegations in Counts Two and Three.

1. The front cover of a magazine called *Wonder Boy No. 70*

The actual cover of *Wonderboy No. 70* which Villard transported to California was seized in his apartment in Van Nuys at the time of his arrest. This court suppressed that evidence because it was the fruit of an illegal search. *See U.S. v. Villard,* 678 F.Supp. 483 (D.N.J.1988). However, the government acquired an advertisement which featured, *inter alia,* the front cover of that same magazine. Since the advertisement was obtained independently of the illegal search, the photograph of the front cover of *Wonderboy No. 70* was admitted into evidence. Mr. Feltman testified that it was an accurate likeness of the magazine cover which he had seen in Mr. Villard's possession. This depiction featured a male seated with his legs open towards the view-er. He was clad in only a pair of brief shorts. The male had a smile on his face. Protruding clearly from one leg of the shorts was an erection. There was no expert testimony of the male's age. The government argued that he was clearly under the age of eighteen, as required for a violation of section 2252(a)(1). Surveillance tapes made while the defendant and Mr. Feltman were viewing the materials in New Jersey recorded Mr. Villard speculating that the male might be fifteen, sixteen, or seventeen years of age. Government Exhibit 34, Transcript of F.B.I. Surveillance Tape at 658–34–7.

With respect to the front cover of *Wonderboy No. 70,* as with each of the materials which formed the basis of Counts Two and Three, the jury was asked the following special interrogatory: "Do you find unanimously and beyond a reasonable doubt that the outside front cover of a magazine referred to as 'Wonderboy number seventy' contained a visual depiction of a minor engaged in sexually explicit conduct?" The jury responded to this interrogatory in the negative.

2. The inside front cover of the *Wonderboy No. 70* magazine

The jury was not able to view the actual picture inside the front cover of *Wonderboy No. 70.* However, the government presented surveillance tapes of Feltman and Villard looking at the magazine cover. Feltman then testified and described what the two men had been viewing:

Q. From your recollection, please describe that picture now as accurately as you can to the members of the jury.

 . . . . .

A. Okay. There was a picture of a boy on the inside of the front cover, he appeared to be 13, 14 years of age. He was fully nude, he had a full erection. And he was taken in an outdoor setting full-length type of picture. And he was facing like towards his left looking out that way.

Q. ... If you put this photograph in a T.V. screen, what would be the relative size of the boy in that screen? Is it a far

away shot? Is it a closeup shot? Explain.

A. I would consider [sic] to have been a far away shot.

Q. Now explain what you mean.

A. Far away meaning you could see the surrounding area that he was in. Clearly tell that it was an outdoor setting. And clearly identified him from head to toe.

Q. How much of the page did he take up?

A. It was a full page photograph.

Trial Testimony of Henry Feltman, March 17, 1988 at 15–16.

When asked in a special interrogatory whether they found the inside front cover of *Wonderboy No. 70* to have depicted a minor engaged in sexually explicit conduct, the jury responded in the negative.

3. A specific photograph contained within the magazine *Jeans No. 8*

Although the government did not possess the magazine *Jeans No. 8* at the time it indicted Villard, it obtained a copy from a store in France prior to trial. That copy was submitted to the jury. *See* Government Exhibit No. 42. *Jeans No. 8* contained photographs of young boys throughout. There are thirty-nine pages of photographs in all. Most of the photos depict young men in clothing, although many are clad in only their underwear. The magazine appears to be a photographic essay of young males at the seashore. All text is in French.

Several of the photos depict fully-nude young males. For example, page twenty-five depicts a nude young male standing in shallow water. His arms are thrown behind his head. His back is arched and his genitals are clearly visible. Interestingly, the government did not contend that this photograph, or several others which displayed the genitals of young men, constituted a lascivious exhibition of the genitals or pubic area of a minor. The government alleged that a single photo on page seventeen violated section 2252(a)(1). Government Exhibit No. 42A. The photo depicts a young male in a kneeling position. He is nude except for a sock on one foot, a wristwatch, and a pair of pants which are draped across his knees. The boy's sneakers and shirt are next to him on the floor. Most of the pubic area is covered by the subject's right hand.

When asked in a special interrogatory whether this picture depicted a minor engaged in sexually explicit conduct, the jury responded in the negative.

4. Photographs contained within a magazine called *Beach Boys No. 2*

*Beach Boys No. 2* was not admitted into evidence. The jury saw F.B.I. surveillance tapes of Feltman and Villard perusing this magazine and commenting upon it. It was impossible to make out any details of the magazine from the video images; however, it obviously contained several pages. The pictures in question were apparently contained on two pages which were across from one another in the magazine. The jury heard and read the following transcribed portion of the conversation which took place when the two pages were being viewed:

Feltman: Excellent. Oh, even better. This is what, Beach Boy Number 2. In Paris, huh?

Villard: Yeah, I went to this address, they were closed up and they didn't open until Tuesday and I left Sunday ... or something like that.

Feltman: Uh huh.

Villard: So there was no way I could rearrange my trip even though I ...

Feltman: Now what kind of store would you find these in?

Villard: Uhh, I bought these in a gay bookstore.

Feltman: O.K. Certainly un ... got nothing on there.

Villard: It's done with mirrors.

Feltman: Huh?

Villard: They have mirrors.

Feltman: I wonder if he's asleep. He's three quarters hard. Maybe he sleeps in the buff like that. He's pretty hairy, though, God but not just much under the arm.

Government Exhibit 34, Transcript of F.B.I. Surveillance Tape at 660–34–9.

After the jury was shown a portion of the surveillance videotape which included the above conversation, Feltman testified as follows:

Q. Now which magazine are you looking at that [sic] that point?

A. I'm looking at Beach Boys Number Two.

Q. Now you've just talked about some photos and Mr. Villard talked about mirrors. You're looking at the magazine, correct?

A. Correct.

Q. In front of you. Please explain to the jury as accurately as you can the description of the, of the depictions on those pages.

A. Okay. I was looking at Beach Boys number two. The magazine was opened like this. You could see there was two photographs on each page. Like a left page and a right page. Now these pictures were all of the same boy. This boy was approximately 14, 15 years old. He was fully nude. He was lying on what appeared to be a bed or a mattress. And his eyes were closed as though he was sleeping. However, looking at the two pictures on the left page, versus the two pictures on the right page, they were very, very similar. They pretty near looked the same. This is where Bob said it looks like it was done with mirrors. This was, page was a reflection of the left page. The right page, vice versa. It could work either way. However, I don't believe he was asleep because there were slightly variations between each photograph. The way the boy was lying there had been a little bit of movement each time. His knees were bent slightly upwards during this.

Q. Now when you said—

A. And he had three quarters, you know, like a three quarters erection, semi erect.

Q. Once again, how much of the, each photograph did this child take up?

A. Okay, these were close, closein [sic] type photographs showing him from his head down to approximately knee level.

That they filled the photographs on each page. They filled the entire page.

Trial Testimony of Henry Feltman, March 17, 1988, at 16–17.

It could also be inferred that the following conversation, which occurred on the next portion of the surveillance tape which was played for the jury, referred to the same set of photographs:

Feltman: Would you keep them books at home, or do you consider them too risque?

Villard: No. I don't keep them out where you can see them at home. But I keep them on a ... (unintelligible)

Feltman: I mean they have hard ones and I'm surprised that ...

Villard: Just that one. That one, I don't keep them around the house with a hard on.

Feltman: What the Wonderboy one.

Villard: Yeah.

Feltman: Yeah. I mean some of the other pictures in there were ...

Villard: No hard he's laying in the bed, just flopped up. I mean, its you know, its really not hard, there's no sexual activity going on.

Feltman: Yeah. Still, it's, huh, I think in some places just an erection will qualify as ...

Villard: Yeah, I'm saying its not erect really.

Feltman: Huh.

Villard: If he's standing up to make sure it was an erection wouldn't you.

Feltman: Uh huh.

Villard: And everything else is obviously, you know, innocent.

Government Exhibit 31, Transcript of F.B.I. Surveillance Tape at 642–31–1.

In response to the special interrogatory: "Do you find unanimously and beyond a reasonable doubt that a magazine referred to as 'Beach Boys number two' contained a visual depiction of a minor engaged in sexually explicit conduct?"—the jury responded "Yes." The jury also found that Villard had transported that visual depiction from California to New Jersey and back again,

and was therefore guilty on both Counts Two and Three.

Following the verdict, defendant renewed his motion for a judgment of acquittal and also moved, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33.

## III. OPPOSING ARGUMENTS

Defendant argues that his conviction was not supported by sufficient evidence because the jury was not shown the actual photographs contained in *Beach Boys No. 2.*

Defendant maintains that in the absence of the actual photographs, the jury could not have properly performed its function of evaluating those visual depictions, as instructed by the court, to determine whether they portrayed a minor engaged in explicit sexual conduct.[1]

Defendant argues that the particular type of child pornography alleged in this case, "lascivious exhibition of the genitals or pubic area," is more difficult to identify by description than the other types of depictions of minors which are prohibited by section 2252. Defendant envisions a "hierarchy" of offenses in that statute, which also proscribes the interstate transportation of visual depictions of minors engaged in "sexual intercourse," "bestiality," "masturbation," and "sadistic or masochistic abuse...." 18 U.S.C. § 2256(2)(A)–(D). Defendant considers the "lascivious exhibition of the genitals or pubic area" to be the least severe and most difficult to describe of the activities prohibited. Essentially, this argument is based on the premise that mere nudity does not violate the statute, *Faloona v. Hustler Magazine, Inc.,* 607 F.Supp. 1341, 1343 n. 4 (N.D.Tex.1985) (citing *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)) and that

a particularly detailed description would be needed in order for a jury to determine whether the line between nudity and "sexually explicit conduct" has been crossed. Therefore, even if a child pornography conviction can, in some circumstances, be supported solely by the descriptive testimony of a witness, defendant argues that the description given by Mr. Feltman in this case "fell far short of providing the kind of description that is required by law." Defendant's brief at 32.

Defendant also argues that the government failed to produce sufficient evidence on the question of age. Mr. Feltman testified that the male depicted in *Beach Boys No. 2* appeared to be approximately fourteen or fifteen years of age. No expert testimony on age was presented. Defendant maintains that Mr. Feltman's testimony as to the apparent age of the male was no evidence of age at all, since Mr. Feltman was not an expert and had no independent knowledge of the subject's age. Defendant asks the court to take judicial notice of the fact that persons often appear younger than their actual age and that an individual who appears to be approximately fifteen could well be eighteen years of age.

In sum, defendant maintains that even when viewed in the light most favorable to the government, there was not substantial evidence to support the guilty verdicts on Counts Two and Three. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Feldman,* 425 F.2d 688, 692 (3d Cir.1970).

With respect to defendant's motion for a new trial, defendant argues that the presentation of evidence on Count One, which was dismissed by the court at the close of the government's case, necessarily had a prejudicial effect on the jury which "spilled

---

1. The jury was instructed as follows:
 A photograph or visual depiction of a nude male under 18 years of age in which his genitals and pubic area are exhibited is not a violation of the statute unless such male is engaged in sexually explicit conduct.

 . . . . .

 The mere exhibition of the genitals or pubic area of a male under 18 years of age in a photograph or video tape is not, without more, sexually explicit conduct.... The determination will have to be made based upon the overall content of the visual depiction, taking into account the age of the minor, the combined effect of the setting, attire, pose and if emphasis on the genitals is designed to elicit a sexual response in the viewer....

 Jury Instruction, March 21, 1988.

over" into their considerations of Counts Two and Three. Defendant also submits that he chose not to cross-examine Mr. Feltman with regard to Counts Two and Three because to do so would have opened the door for the government to elicit even more prejudicial rebuttal testimony concerning Count One. Therefore, defendant argues that the presence of Count One prior to its dismissal prejudiced the jury on the remaining counts and hampered defendant's ability to defend himself on those counts.

The government maintains that when the evidence is viewed as a whole, and in the light most favorable to the prosecution, there was substantial evidence to support the guilty verdict. The government argues that Mr. Feltman's description of the photos in *Beach Boys No. 2* was sufficient to demonstrate to the jury that those pictures constituted a "lascivious exhibition of the genitals" of a minor. The government asserts that the evidence enabled the jurors to apply six factors which are needed to make that determination. *See United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal.1986), *aff'd sub. nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987); *United States v. Nolan*, 818 F.2d 1015, 1019 n. 5 (1st Cir.1987). The government believes that each of those six factors was met. First, the focal point of the picture was on the genitals. The government believes that because the photos were described as closeups of a young male with a partial erection, it would be difficult for the focal point of the photos to be elsewhere than the genitals. Second, the setting of the photos was a bed, a place generally associated with sexual activity. Third, the pose was unnatural, on the premise that a depiction of a minor with an erection can never be a natural pose. Fourth, the minor was fully nude. Fifth, the presence of an erection suggested a willingness to engage in sexual activity. Sixth, the jury could reasonably infer that the photos were intended to elicit a sexual response from the viewer, based on the surveillance tape which showed Feltman and Villard intently viewing the photographs. The government in fact argues that any visual depiction of a

minor with an erection is *per se* a "lascivious exhibition of the genitals."

On the questions of age, the government points out that a prosecution can be supported by circumstantial evidence. *See Paez v. O'Lone*, 772 F.2d 1158, 1160 (3d Cir.1985) (per curiam). The government believes that Mr. Feltman's testimony of what he saw when he viewed *Beach Boys No. 2* clearly established that the male depicted therein was either fourteen or fifteen years old.

In response to defendant's motion for a new trial, the government disputes the contention that the evidence presented on Count One prejudiced the jury's determinations of Counts Two and Three. The government believes that the jury's responses to the special interrogatories on Counts Two and Three negate any claim of prejudicial effect, because the jury separately analyzed the evidence presented on each visual depiction and only found guilt based on one out of the four depictions which they evaluated.

## IV. ANALYSIS

There is no subject which elicits a more passionate response than the sexual exploitation of children. Society abhors, and rightfully so, the victimization of the defenseless child. It must be the task of this court to review the evidence and the law in this case as dispassionately as possible in order to ensure justice.

### A. *Motion For A Judgment of Acquittal*

Rule 29 directs this court to enter a judgment of acquittal on the offenses charged "if the evidence is insufficient to sustain a conviction of such ... offenses." Fed.R.Crim.Pro. 29. Therefore, the only issue before this court is whether there was sufficient evidence to support the convictions as a matter of law. *United States v. Miah*, 433 F.Supp. 259 (E.D.Pa.1977), *aff'd*, 571 F.2d 573 (3d Cir.1978). This court will examine the evidence as a whole, *United States v. Beck*, 615 F.2d 441, 448 (7th Cir.1980), and in the light most favor-

able to the government. *United States v. Lowell*, 490 F.Supp. 897, 901 (D.N.J.1980), *aff'd*, 649 F.2d 950 (3d Cir.1981). The court will not assess the credibility of witnesses or the weight of the evidence. *United States v. Cohen*, 455 F.Supp. 843, 852 (E.D. Pa.), *aff'd*, 594 F.2d 855 (3d Cir.1978), *cert. denied*, 441 U.S. 947, 99 S.Ct. 2169, 60 L.Ed.2d 1050 (1979). Nor will it substitute its own subjective interpretation of the evidence for that of the jury. *United States v. Varkonyi*, 611 F.2d 84, 85 (5th Cir.) (per curiam), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). In sum, the court will not usurp the role of the jury, which was to evaluate the evidence which was put before it in light of the legal instructions administered by the court.

However, defendant's Rule 29 motion was made at the close of the government's case and was renewed at the close of defendant's case. The court reserved its ruling on those motions, which were properly made before the jury began its task of evaluating the evidence. Therefore, while the court will not invade the province of the jury, there is a proper role for the court to play in reviewing the evidence to determine whether, as a matter of law, it was sufficient to support a guilty verdict. Specifically, the question this court must answer is whether there was "substantial evidence upon which a *jury* might justifiably find the defendant guilty beyond a reasonable doubt." *White v. United States*, 279 F.2d 740, 748 (4th Cir.), *cert. denied*, 364 U.S. 850, 81 S.Ct. 96, 5 L.Ed.2d 74 (1960).

### B. *Statutory Definition of Child Pornography*

The statute under which defendant was convicted states, in pertinent part:

(a) Any person who—

(1) knowingly transports or ships in interstate or foreign commerce or mails any visual depiction, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct ...

shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a). The statute further defines "sexually explicit conduct" as the following:

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B) bestiality;

(C) masturbation;

(D) sadistic or masochistic; abuse; or

(E) *lascivious exhibition of the genitals or pubic area of any person....*

18 U.S.C. § 2256(2) (emphasis added). The statute defines a minor as "any person under the age of eighteen years." 18 U.S.C. § 2256(1).

Defendant has not argued that the government failed to introduce sufficient evidence to demonstrate that he transported a visual depiction across state lines on two occasions in 1986. Defendant's basic assertion is that, in the absence of the actual pictures, the evidence presented was not a sufficient basis for the jury to conclude beyond a reasonable doubt that he transported depictions of a "minor," or that the individual depicted was engaged in a "lascivious exhibition of the genitals." The government points out that defendant cites no authority which indicates that the actual photographs must be placed into evidence in order to prove these elements of the crime. However, defendant correctly observes that no reported case reveals a prior successful prosecution under this statute without the actual visual depictions being placed before the jury. The court therefore has been called upon to decide a unique question of law.

### C. *Lascivious Exhibition of the Genitals*

Defendant does not argue that proof of all of the types of illegal depictions listed in section 2252 would require the introduction into evidence of actual photographs. Putting aside the question of age for a moment, a witness' description of a photograph or film showing a minor engaged in sexual relations with an animal might easi-

ly suffice to prove the existence of a depiction of bestiality, in violation of section 2252, as defined by section 2256(2)(B). That is because the prohibited activity would not be particularly difficult to describe. A photograph of an act of bestiality would contain no subtleties which the jury must study in order to conclude that the prohibited act had been depicted. This would seem to hold true for the other types of "explicit sexual conduct" defined in sections 2256(2)(A) through (D).

With respect to section 2256(2)(E), however, the available authority and the nature of the prohibited activity indicate to this court that greater caution is needed in deciding whether a witness' description has sufficiently demonstrated a "lascivious exhibition of the genitals."

The court tends towards caution in this matter, first because of the language of the statute itself. The statute prohibits the depiction of "explicit sexual conduct." This term engenders a notion of some activity involving the minor who is the subject of the depiction. Clearly, if the depiction is of intercourse, bestiality, masturbation, sadism, or masochism, some activity definitely will be occurring in the photograph.[2]

When dealing with exhibition of the genitals, the statute does not prohibit all depictions of minors in which the genitals are visible. The statute prohibits the *"lascivious* exhibition of the genitals." 18 U.S.C. § 2256(2)(E) (emphasis added). The court will not agree with defendant that this prohibited activity is a less severe form of child pornography. The use of children in visual depictions featuring any type of sexual activity is a brutal breach of trust which the law must, and does, punish equally. However, the court acknowledges that in determining the depiction of a "lascivious exhibition of the genitals," a jury is called upon often to make a more careful evaluation based on subtle visual nuances. This is because the law does not prohibit the transportation of visual depictions of mere nudity.

In *United States v. Dost,* 636 F.Supp. 828 (S.D.Cal.1986), the district court established six factors which can be applied to the depiction of a minor in order to determine whether it involves the lascivious exhibition of the genitals. The court stated:

[T]his Court feels that, in determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" under § 225[6](2)(E) [formerly § 2255(2)(E),] the trier of fact should look to the following factors, among any others that may be relevant in the particular case:

(1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

(2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

(3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

(6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Of course, a visual depiction need not involve all of these factors to be a "lascivious exhibition of the genitals or pubic area." The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor.

For example, consider a photograph depicting a young girl reclining or sitting on a bed, with a portion of her genitals exposed. Whether this visual depiction contains a "lascivious exhibition of the genitals" will depend on other aspects of the photograph. If, for example, she is dressed in a sexually seductive manner, with her open legs in the foreground, the photograph would most likely constitute a lascivious exhibition of the genitals. The combined effect of the setting, at-

---

**2.** The court does not mean to imply that the minor must himself be active in the photograph.

The depiction would, however, contain sexual activity which involved the minor in some way.

tire, pose, and emphasis on the genitals is designed to elicit a sexual response in the viewer, albeit perhaps not the "average viewer", but perhaps in the pedophile viewer. On the other hand, if the girl is wearing clothing appropriate for her age and is sitting in an ordinary way for her age, the visual depiction may not constitute a "lascivious exhibition" of the genitals, despite the fact that the genitals are visible.

636 F.Supp. at 832. The Ninth Circuit affirmed the district court's determination that the pictures before it were "lascivious." 812 F.2d at 1245. The circuit court took some exception to the district court's appraisal of specific photos, finding the legal standard employed too "strict" and overly generous to the defendant. *Id.* at 1244. However, in discussing the definition of lascivious, the Ninth Circuit did not clarify the factors to be employed. The circuit court stated:

> The picture of a child "engaged in sexually explicit conduct" within the meaning of 18 U.S.C. §§ 2251 and 2252 as defined by § 2255(2)(E) is a picture of a child's sex organs displayed lasciviously—that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.
>
> The crime punished by the statutes against the sexual exploitation of children, however, does not consist in the cravings of the person posing the child or in the cravings of his audience. Private fantasies are not within the statute's ambit. The crime is the offense against the child—the harm "to the psychological, emotional, and mental health" of the child, *Ferber*, 458 U.S. at 758, 102 S.Ct. at 3355; the "psychological harm," *id.* at 775, 102 S.Ct. at 3364 (O'Conner, J., concurring); the invasion of the child's "vulnerability." *Id.* at 776, 102 S.Ct. at 3364 (Brennan, J., concurring). These harms collectively are the consequential damages that flow from the trespass against the dignity of the child.

812 F.2d at 1244–45.

This court essentially adopted the *Dost* factors to instruct the jury on how to iden-

tify a "lascivious exhibition of the genitals." [3]

As the *Dost* court acknowledged, they are only factors, some or all of which may be applied to a particular photo. 636 F.Supp. at 832. They serve to distinguish between the innocent family photo or artistic depiction of a nude child and the victimization of that child in the creation of child pornography. Child pornography is not created when the pedophile derives sexual enjoyment from an otherwise innocent photo. As the Ninth Circuit stated, "Private fantasies are not within the statute's ambit." 812 F.2d at 1245. When a picture does not constitute child pornography, even though it portrays nudity, it does not become child pornography because it is placed in the hands of a pedophile, or in a forum where pedophiles might enjoy it. *Faloona v. Hustler Magazine, Inc.*, 607 F.Supp. 1341 (N.D.Tex.1985) (nude pictures of children did not constitute child pornography when published in "legitimate" *Sex Atlas* or in "raunchy" *Hustler* magazine, because they did not depict children engaged in sexual conduct).

Therefore, this court is keenly aware that the jury needed substantial evidence upon which to base its decision that the photographs in *Beach Boys No. 2* were in fact, child pornography. The fact that Villard appeared from the evidence to be a pedophile and that he apparently enjoyed viewing these photos does not suffice. It is the photographs which the jury had to evaluate, and not their viewer.

Obviously, the best method for the jury to employ would have been to examine the photographs. In their absence, were the surveillance transcripts and Mr. Feltman's testimony sufficient to enable the jurors to perform their task? Certainly, the observations which Mr. Feltman testified to would seem to provide the jurors with information pertaining to some of the *Dost* factors: a nude subject; lying on a bed; the genitals visible; the subject with a

---

3. The *Dost* factors were proffered by the government as the appropriate legal standard.

partial erection.[4] The court's concern is with the details which Mr. Feltman did *not* convey. For example, from what perspective was the individual photographed? Was it from above, or level with the camera? Was the subject lying on his side, back, or stomach? Was the camera positioned over his shoulder, behind his head, or squarely between his legs? Were the genitals in the foreground, or the background of the picture? Were they in strong light, subdued light, or shadow? The knees were described as "bent slightly upwards." Were they apart or together? Did they partially obscure the genitals, or accentuate them? Where were his arms and hands? Was the photo taken in natural light? Was it taken during the day or at night? Had the subject been posed or did it appear to be a candid shot? The evidence does not answer any of these questions. More detailed testimony, or the actual photographs, could have answered them. They did not. The unanswered questions about the photographs in *Beach Boys No. 2* are probably as boundless as the imagination of the individual who examines the trial record. That is the concern here. The jurors may have been forced to make a determination that was based more on their own imaginations than on the evidence presented. The court does not dispute the proper role which circumstantial evidence can play in arriving at a verdict. However, "a trial judge should not permit a case to go to the jury if the evidence is so scant as to allow the jury merely to speculate or to conjecture as to the defendant's guilt." *United States v. Frol*, 518 F.2d 1134, 1137 (8th Cir.1975) (quoting *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir.1973).

This court believes that the evidence with respect to *Beach Boys No. 2*, when put to the task of establishing a "lascivious exhibition of the genitals," was not a substantial basis upon which the jury could find the defendant guilty beyond a reasonable doubt. This is not because of what the testimony said about the photographs, but because of what it did not say.

The government maintains that the depiction of a child with an erection can never be a natural pose and is child pornography *per se*. The court cannot say that Feltman's description of a "partial erection" established that the photographs were child pornography. The jury did not find that the inside front cover of *Wonderboy No. 70*, which Feltman described as depicting a full erection, was child pornography. Further, while the court would certainly acknowledge that the depiction of an erection would in many cases constitute a "lascivious exhibition of the genitals," that may not be true in all cases. This is so because of the countless subtle and not so subtle differences which exist between individual photographs. A family photo of a child asleep, or in some other natural setting, might not constitute "explicit sexual conduct," even though an erection is present. Again, this depends on the individual photograph. The jury needs a wealth of information to make that determination. All of that information is in the photograph. A substantial amount of that information was missing in the description available to the jury in this case.

Perhaps a witness' description of a photograph can in some cases enable a jury to properly determine whether the photo depicted a lascivious exhibition. The court will not preclude the government, in cases where the actual visual depiction is not available, from attempting to prove a violation of section 2252 with circumstantial evidence. In the present case, the visual depictions which the jury did see, and found not to constitute child pornography, could have been "accurately" described in a manner which would have produced a different result. Indeed, the court's description of those materials in this opinion may engender surprise by some that the jury did not find them to be child pornography. However, there is information contained in the

---

4. The court does not give any weight to statements by Villard, on the F.B.I. surveillance tapes, that the photographs in *Beach Boys No. 2* did not depict an erection or sexual activity and were of an "innocent" nature, since the court is reviewing the evidence in the light most favorable to the government and granting the government all reasonable inferences therefrom.

photographs themselves which is not easily conveyed in a short, verbal description. The court finds that with respect to the photographs in *Beach Boys No. 2,* the government did not produce substantial evidence from which the jury could conclude beyond a reasonable doubt that those photographs were visual depictions of a lascivious exhibition of the genitals or pubic area.

### D. *Proof of Age*

In order to find the defendant guilty of transporting child pornography, the jury had to determine not only that the pictures in *Beach Boys No. 2* depicted a male engaged in explicit sexual conduct, but that the male was a minor, i.e., under eighteen years of age. 18 U.S.C. §§ 2252(a)(1)(A), 2256(1). The evidence which the jury had to consider on age consisted of Feltman's testimony at trial. In describing the photographs in *Beach Boys No. 2,* Feltman stated: "The boy was approximately 14, 15 years old." *See* Trial Testimony, *supra.* The court can find no other evidence from which the jury could reasonably infer the age of the subject male. On the F.B.I. surveillance tape and in his testimony, Feltman stated that the subject had a partial erection. He also stated on the tape that the subject was "pretty hairy, though, God, but not just much under the arm." From those descriptive details, the jury could not reasonably infer that the subject was a minor, since they are sexual characteristics which might appear in individuals under or over the age of eighteen. Therefore, the only proof of age in this case is Feltman's testimony that the boy depicted was "approximately 14, 15 years old." The court must decide whether this was substantial evidence that the male depicted in *Beach Boys No. 2* was less than eighteen years of age.

The government can prove the age of an individual in a photograph in a number of ways. First, the individual himself, or someone who has knowledge of his age, can testify as to the individual's age at the time the photograph was taken. Second, an expert, such as a pediatrician, can analyze the photograph and give an expert opinion as to the age of the individual. In fact, the government employed a pediatrician to establish the ages of minors depicted in over 200 photographs in *United States v. Nolan,* 818 F.2d 1015, 1017 (1st Cir.1987), even though the photographs were also available for the court's inspection.[5] Third, the jury can examine the photographs in question and determine for itself whether the individual is under eighteen years of age. In this case, a lay witness who had seen the photographs gave his opinion of the individual's approximate age.

To return to the hypothetical "easy case" discussed above, if a witness describes a depiction of a child clearly engaged in bestiality and states that based on his personal experience the child was approximately five years old, this might provide the jury with a basis to conclude that the statute had been violated. The witness might be able to convey the characteristics of the child depicted and explain why, based on the witness' normal observations of individuals of different ages, these characteristics were those of a toddler and not of a teenager. It is conceivable that a lay witness can perceive the clear differences between a child in the earliest years of life and a young adult aged eighteen. Those differences are also within the common experiences of the jurors and they can evaluate the testimony accordingly.

In this case, the witness did not have independent knowledge of the age of the male depicted in *Beach Boys No. 2.* In the absence of the photographs, no expert could be called to evaluate the age of the subject. The jurors could not examine the photographs in order to form their own opinion of age. Instead, Feltman testified

---

5. In *Nolan,* the court rejected the defendants' contention that further expert testimony should have been required to demonstrate that the photographs had not been altered and that the subjects depicted were real-life children and not mannequins or an artist's rendering. The court found those evaluations to be within the range of a normal person's experience and knowledge. *Nolan,* 818 F.2d at 1017–18.

as to the "approximate" age of the subject. No basis was given for the formation of this opinion. The jury was left to speculate as to whether Feltman was correct or incorrect in his assessment of age. Since he testified as to "approximate" age, they were also left to speculate as to whether his estimate erred on the low or the high side. The evidence submitted on age does not even conclusively state that the subject was under eighteen years of age.[6] When the individual depicted may well be in his late teens, proof of age becomes critical. The evidence regarding the age of the male depicted in *Beach Boys No. 2* was scant and speculative. It did not provide the jury with a sufficient basis upon which to conclude beyond a reasonable doubt that the photographs depicted an individual under eighteen years of age. The evidence presented did not sufficiently compensate for the absence of the photographs themselves.[7]

### E. *Determination of Motion For a New Trial Pursuant To Rule 29*

Federal Rule of Criminal Procedure 29(d) directs this court, subsequent to its granting of defendant's motion for a judgment of acquittal, to "determine whether any motion for a new trial should be granted if the judgment of acquittal is thereafter vacated or reversed, specifying the grounds for such determination." Fed.R.Crim.P. 29(d). Federal Rule of Criminal Procedure 33 empowers the court to order a new trial "if required by the interests of justice."

 A motion for new trial can be based on the grounds that the verdict was either against the weight of the evidence or that the court or prosecutor committed an error that substantially affects the rights of the defendant. *United States v. Simms*, 508 F.Supp. 1188, 1202 (D.La. 1980). Where the motion is based on the weight of the evidence, the trial court has broad power to weigh the evidence and to

6. Defendant argued at trial that he did not object to Feltman's testimony on age because he believed Feltman was only testifying as to the apparent age and not the actual age of the subject. Defendant argues that Feltman gave no basis for his opinion of age and was not qualified to testify on that subject.

In his testimony, Feltman stated directly that the boy depicted was "approximately 14, 15 years old." This was in response to a request by the Assistant United States Attorney that Feltman "explain to the jury as accurately as you can the description of the, of the depictions on those pages." *See* Trial Testimony, *supra*. Whether Feltman testified as to the apparent age or the actual age of the subject, he did not testify as to any specific age or range of ages and did not provide any basis for his opinion. The jury was left to speculate on the accuracy of his estimate.

7. On June 17, 1988, the court received the following communication from the United States Attorney:

Recently, my office was made aware by the FBI of the existence of certain evidence in the above-captioned case that previously had been thought to be unavailable. During a law enforcement conference, the case agent, Robert Wineriter, was listening to a lecture by a United States Customs special agent, who held up certain child pornography materials in connection with his lecture. After the lecture, Wineriter determined that one of the magazines in the possession of this agent was "Beach Boys No. 2." The jury in *Villard* convicted defendant of interstate transportation of four photographs contained within that magazine. Subsequently, Wineriter learned that Customs had possession of this magazine (and "Beach Boys No. 1" and "Jeans No. 8") since late 1986 but for some reason did not find them when the FBI requested it search for the magazines in connection with the *Villard* prosecution. It was an unfortunate oversight.

Because the photographs depict a youth who appears to be in his early teens, the Government could not rule out the possibility that he was over eighteen when the photographs were taken. Therefore, disclosure is required under the *Brady* rule. The Government has engaged the services of an expert on the determination of age from photographs and expects an opinion to be rendered within the next few days. At that time, the Government will make available the magazine to both the Court and the defense. It should be noted that the Government's position with respect to the pending post-trial motions remains unchanged, notwithstanding this new development.

The court has not reviewed either the copy of Beach Boys No. 2 which is now in the possession of the government, or any expert report based on a study of that photograph. Of course, the subsequent discovery of that magazine can have no effect on this court's Rule 29 determination, which analyzes the sufficiency of the evidence which was actually placed before the jury.

consider the credibility of witnesses. *Id.;* *United States v. Phifer,* 400 F.Supp. 719, 722 (E.D.Pa.1975), *aff'd,* 532 F.2d 747 (3d Cir.1976); *United States v. Caramandi,* 415 F.Supp. 443, 445 (E.D.Pa.) *aff'd mem.* 538 F.2d 321 (3d Cir.1976); *see also United States v. Gross,* 375 F.Supp. 971, 973 (D.N.J.), *aff'd,* 511 F.2d 910 (3d Cir.1974), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed. 2d 249 (1975); *United States v. Martinez,* 763 F.2d 1297, 1312–13 (11th Cir.1985); *Cf. United States v. Clark,* 294 F.Supp. 1108, 1111 (W.D.Pa.), *aff'd,* 425 F.2d 827 (3rd Cir.1970), *cert. denied,* 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970) (evidence must be viewed in light most favorable to prosecution); *United States v. Fluellen,* 396 F.Supp. 1168 (E.D.Pa.1975), *aff'd mem.,* 530 F.2d 965 (3d Cir.1976) (government entitled to have all reasonable inferences resolved in its favor). To protect the interest of justice, the court should evaluate the evidence objectively. *Caramandi,* 415 F.Supp. at 445. If the court finds that the verdict is contrary to the evidence, or to its weight, and that a miscarriage of justice resulted, the court may then set aside the verdict and grant a new trial. *Phifer,* 400 F.Supp. at 722; *Simms,* 508 F.Supp. at 1202.

As previously discussed, the evidence presented by the prosecution is not sufficient to provide the jury with a basis to conclude beyond a reasonable doubt that the pictures in *Beach Boys No. 2* depicted a boy under the age of 18 years engaging in sexually explicit conduct in violation of section 2252. For the purposes of a Rule 29 motion for judgment of acquittal, the court is required to view the evidence in a light most favorable to the government. However, under Rule 33, a motion for new trial may be granted if required in the "interest of justice." Rule 33, therefore, does not require the court to decide the matter giving all inferences and benefits to the government. *See Simms,* 508 F.Supp. at 1202. Thus, under this significantly broader standard, defendant is entitled to a new trial. The jury could not reasonably conclude from the evidence that the picture in *Beach Boys No. 2* contained a lascivious exhibition of the genitals or pubic area.

Mr. Feltman's testimony did not provide the necessary details for the jury to evaluate the lasciviousness of the photo, nor did his testimony establish that the child in the photo was clearly under 18 years of age.

Defendant's motion for new trial can also be granted on alternative grounds. Defendant contends that the evidence heard by the jury with respect to Count One, which the court dismissed at the close of the government's case, prejudiced the jurors against Villard when they considered the charges in Counts Two and Three. Defendant argues that because the jury heard testimony that defendant enjoyed viewing young males in the nude, the jury inferred that defendant was a pedophile. Further, defendant contends that the jury concluded that the male depicted in *Beach Boys No. 2* was a minor because of the evidence relating to Count One.

The government argues that the evidence concerning Count One did not *substantially* prejudice defendant. The government contends that the prejudice to defendant is not substantial for three reasons: first, the evidence with regard to Count One was not related to Counts Two and Three; second, the government and the court limited the testimony of the minor to reduce the amount of prejudice; and third "if the testimony and evidence was so prejudicial, the jury should have convicted defendant of *all* the depictions in Counts 2 and 3." Brief by Government at 18.

Although Count One may not have been directly related to Counts Two and Three, a substantial risk of prejudice existed from the Count One testimony. Because the defendant enjoyed viewing the pictures in *Beach Boys No. 2,* the evidence used to prove Count One, which inferred that Villard was a pedophile, reasonably contributed to the inference that the pictures were lascivious. The fact that the court limited the testimony did not curb these inferences. In addition, it does not logically follow that the jury should have convicted defendant of all the depictions if substantial prejudice occurred from Count One. The jury viewed two pictures, including a photograph of a young male with a *full* erection.

.

They determined that the pictures viewed did not contain a lascivious exhibition of the genitals or pubic area of a minor. Yet, the jury determined that the picture in *Beach Boys No. 2*, which contained a young male of indeterminate age with a "partial erection," contained a lascivious exhibition of the genitals or pubic area of a minor. The jury had to evaluate that picture without seeing it and had to rely on the description by Feltman. To evaluate the lasciviousness of the photograph, the jury had to draw inferences from the evidence produced at trial. The evidence included testimony that is related only to Count One, which inferred that defendant gained pleasure from viewing nude pictures of young men. This court cannot discount the impact of this evidence on the minds of the jurors and finds that the prejudicial affect of the evidence regarding Count One is sufficient to warrant a new trial.

## CONCLUSION

For the foregoing reasons, defendant's motion for the court to enter a judgment of acquittal with respect to Counts Two and Three is granted. Defendant's motion for a new trial is granted.

An appropriate order will be entered.