**UNITED STATES of America**

**v.**

**Charles DAURAY.**

**Crim. no. 398CR228 (JBA).**

United States District Court,
D. Connecticut.

April 26, 1999.

Gary D. Weinberger, Federal Public Defender's Office, Hartford, CT, for Charles R. Dauray.

Denise Derby, Peter A. Cark, Barbara Bailey Jongbloed, Stephen C. Robinson, U.S. Attorney's Office, New Haven, CT, for U.S.

**RULING ON DEFENDANT'S MOTION TO DISMISS INDICTMENT [doc. # 13], DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL [doc. # 18], AND DEFENDANT'S MOTION IN ARREST OF JUDGMENT [doc. # 24]**

ARTERTON, District Judge.

On February 9, 1999, a unanimous jury found Charles Dauray guilty on Count One of the Indictment. The Indictment charged that:

On or about May 13, 1994, in the District of Connecticut, the defendant, CHARLES DAURAY, did knowingly possess three (3) or more photographs, and or copies of photographs, and other matters, that had been transported in interstate commerce, the production of which involved the use of minors engaged in sexually explicit conduct, specifically, the lascivious exhibition of genitalia, and which visual depictions were of such conduct as mentioned above.

All in violation of Title 18, United States Code, Section 2252(a)(4)(B).

Section 2252(a)(4)(B) provides that any person who

(B) knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—

(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(ii) such visual depiction is of such conduct shall be punished . . .

18 U.S.C. § 2252(a)(4)(B) (as in effect).[1] Section 2256, the definitions provision for the chapter, defines "sexually explicit conduct" as, inter alia, "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(E).

At trial, the defendant entered into a stipulation with the government stating that:

1. On or about May 13, 1994, Charles Dauray possessed the visual depictions which have been introduced into evi-

---

1. Section 2252 was amended by Pub.L. 105–314 on Oct. 30, 1998. As amended, § 2252(a)(4)(B) provides that it shall be illegal for a person to "knowingly possess[ ] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce . . ., if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct."

dence as Government Exhibits 1 through 13; and

2. Charles Dauray was aware of the contents of these visual depictions and thus, he knew that genitalia of minors appear in each of them.

(Court's Ex. 1). In a second stipulation, the defendant and government agreed that these items were transported or shipped in interstate commerce and traveled from Arizona to Connecticut. (Court's Ex. 2). The substantive evidence at trial consisted of thirteen pictures depicting very young nude boys and girls in various poses. By special interrogatory, the jury made a specific finding that Government Exhibits 9, 10, 12, and 13 constituted lascivious displays of minors' genitalia.

The defendant has moved to dismiss the indictment for failure to charge an offense, for a judgment of acquittal, and has to arrest the judgment. Pursuant to Fed. R.Crim.P. 12(b)(2) and 34, Dauray argues that while the indictment charged that he possessed three or more visual depictions, it nowhere charges that he possessed three or more books, magazines, periodicals, films, video tapes, or other matter *which contain* any visual depiction. The defendant posits that a photograph is in and of itself a "visual depiction" that cannot "contain" any visual depiction, and therefore the indictment failed to charge an offense and should be dismissed. In his motion for acquittal pursuant to Fed.R.Crim.P. 29, the defendant maintains in the alternative that no rational juror could find that the pictures at issue in this case could be found to constitute lascivious displays of the genitalia of minors.

### Motion to Dismiss: "Other Matter Which Contain"

Prior to the 1998 amendment, the statute under which Dauray was found guilty made illegal the possession of "three or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction" that involved the use of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B). It was undisputed at trial that the items that Dauray possessed were loose, individual photographs, not held together by any method or held within any receptacle. Dauray maintains that the indictment did not charge him with an offense, and he did not commit any offense, because he did not possess three or more items "which contain" any visual depiction in violation of the statute.

In examining the meaning of a statute, the Court must first look to the plain meaning of the statute. "[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). "Indeed, '[w]hen the words of a statute are unambiguous, ... this first canon is also the last: judicial inquiry is complete.'" *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir.1994) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

The defendant asserts that the "rule of lenity," under which the Court must choose the more narrow of two equally plausible readings of a criminal statute, requires an interpretation of § 2252(a)(4)(B) in his favor. The rule of lenity, however, "applies only if, after seizing everything from which aid can be derived, ... [the Court] can make no more than a guess as to what Congress intended." *Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (quoting *United States v. Wells*, 519 U.S. 482, 499, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997)). "The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of [the rule of lenity], for most statutes are ambiguous to some degree." To invoke the rule, the Court must conclude that there is a "grievous ambiguity or uncertainty" in the statute. *Staples v. United States*, 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994).

Dauray's argument begins by establishing that under the statute, a photograph is considered to be a "visual depiction." *See United States v. Whiting,* 165 F.3d 631, 633–34 (8th Cir.1999). There is no real dispute that photographs are included within the statutory definition of "visual depictions." Rather, the defendant argues that the logical extension of this construction is that because photographs are visual depictions, individual photographs cannot therefore *contain* visual depictions, as required by the statute.

The defendant attempts to create a metaphysical conundrum where there is none. The statute, which is not elegant in its drafting, is nevertheless not so opaque as to prevent this Court from deriving meaning from the plain language. The statute undeniably requires that the illegal visual depictions be contained within books, magazines, video tapes, "or other matter." However, the defendant's interpretation of the statute requires use of a single definition of a word that has multiple meanings. As defendant uses the term, "contain" means "to have within: enclose." Webster's II New College Dictionary 243 (1995). According to the defendant, the visual depictions must be held within some sort of container: a book, a magazine, an envelope, etc. The word "contain" also means, however, "to have as component parts: comprise" or "to have a capacity for: hold." *Id.* It is common usage of the word "contain" under the latter definitions to say that a photograph contains certain images or visual depictions. It would not be illogical for a

photography enthusiast to remark that "The photographs of Dorothea Dix contain visual depictions of the difficulty of life during the depression" or "Many of Ansel Adams' photographs contain visual depictions of Yosemite National Park." Moreover, a single photograph may be of several different images, and thus contain multiple visual depictions. For example, just as a photograph of a landscape could contain visual depictions of trees, hills, and flowers, a photograph could contain visual depictions that are prohibited under this statute, as well as visual depictions that are entirely legal (such as of furniture). The word "contain" as used in the statute can mean both that items that *enclose* or *hold* visual depictions of minors engaged in sexually explicit conduct are included within the statute's ambit (such as a book), and that items that are *comprised* of such visual depictions are also included (such as a photograph).

In further support of Dauray's construction of the statute, he has submitted the unpublished *United States v. Leachman,* No. 96–14 (W.D.Pa. Feb. 13 1997), holding that for the purposes of counting "three or more," the term "other matter" in the statute refers to a computer hard disk and/or zip files, rather than each graphic file.[2] In reaching this conclusion, Judge Cindrich reasoned that the statute prohibits three or more "tainted items," not three or more tainted visual depictions. A video tape, for example, may contain one or thousands of visual depictions, but the statute prohibits only possession of three or more such video tapes.[3]

**2.** As recently amended, possession of a single item is now illegal under the statute. *See* 18 U.S.C. § 2252(a)(4). It is an affirmative defense, however, for the defendant to have possessed less than three matters containing any visual depiction proscribed if he or she also promptly and in good faith took reasonable steps to destroy each such visual depiction or reported the matter to a law enforcement agency. *See* 18 U.S.C. § 2252(c).

**3.** *Leachman* further reasons that a computer graphic file is not "other matter" as that term is used in the statute because

[a]n image is not contained in a computer file. Instead, an image can be produced on a computer screen by an accumulation of electronic bits stored on a magnetic medium, i.e., a computer disk.... As applied to the present case, the term "other matter" is preceded by "books, magazines, periodicals, films, [and] video tapes." These are all tangible, physical items of matter which are analogous to a computer hard disk, but not to magnetic impressions on that disk. Slip op. at 8–9.

Without expressing agreement or disagreement with *Leachman's* conclusions, the Court reads the case as actually undermining the defendant's arguments. Judge Cindrich's primary distinction between the items listed in the statute and the computer files at issue was one of tangibility. *See id.* at 8–9. The photographs that were found in Dauray's possession were undeniably "tangible, physical items of matter," so even under the reasoning in *Leachman*, the photographs in question would be considered "other matter" that contains visual depictions.[4] Having concluded that the language of the statute is not ambiguous, the Court need proceed no further.

### Motion for Acquittal: Sufficiency of the Evidence

In the alternative, the defendant argues that no rational juror could conclude beyond a reasonable doubt that the pictures at issue constituted the lascivious display of genitalia of minors because the pictures were incomplete, and without the full context of the original, complete photographs, the jury could not properly apply the six-factor test of *United States v. Dost*, 636 F.Supp. 828 (S.D.Cal.1986), *aff'd sub nom, United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987).

Pursuant to Fed.R.Crim.P. 29, Dauray moved for a judgment of acquittal before the case was submitted to the jury. Rule 29(a) provides that "The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." The Court reserved decision on the motion at that time and submitted the case to the jury.

■ In challenging the sufficiency of the evidence, Dauray "carries a heavy burden." *United States v. Anglin*, 169 F.3d

154 (2d Cir.1999). The Court must "consider the evidence in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government, and [the Court] may overturn the conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir.1998).

■ The jury was given the following unobjected instructions, incorporating the *Dost* factors:

The government must also prove that Mr. Dauray knew that the production of these visual depictions involved the use of a minor engaging in sexually explicit conduct. A minor is defined as any person under the age of 18 years. The parties have stipulated that Mr. Dauray knew that the items contained depictions of the genitalia of minors, but the defendant disputes that these depictions constitute the lascivious exhibition of the genitalia or pubic area of minors, and therefore the government must meet its burden of proof that three or more items were such lascivious exhibitions.

Thus, it is your duty in this case to make a determination of whether the government has proved beyond a reasonable doubt that at least three of the visual depictions at issue actually constitute child pornography within the meaning of the statute. You are to decide this by applying the definition in the statute, which requires that the production of the depictions in question involved the use of a minor engaging in sexually explicit conduct, and that they depict minors engaged in sexually explicit conduct. For the purposes of this case, "sexually explicit conduct" means the lascivious exhibition of the genitals or pubic area. The word "lascivious" means lustful or lewd, or with a conscious purpose of arousing sexual desire

---

4. The *Leachman* court seems to draw this conclusion itself in its observation that "a person who possesses three *single porno-* *graphic photographs* ... would be guilty." Slip op. at 9 (emphasis added).

on the part of those who might view the exhibition. In reviewing each photograph to determine whether its visual depiction involves a lascivious exhibition of the genitals, you may consider the following factors:

● whether the focal point of the pictures is on the minor's genitals or pubic area. In order to make this determination, it is necessary to consider the entire photograph and not simply a portion that may later have been removed from the photograph;

● whether the setting is sexually suggestive, for example, in a place or pose generally associated with a sexual activity;

● whether the minor is depicted in an unnatural pose, considering the age of the minor;

● whether the minor was clothed or nude. Mere nudity is not in and of itself lascivious. You must consider this factor in conjunction with the others to determine its weight;

● whether the pictures suggest sexual coyness or willingness to engage in sexual activity. In considering this factor, you may take into account any facial expression, gesture or pose depicted; and

● whether the pictures are intended or designed by the photographer to elicit sexual responses from the viewer.

The weight or lack of weight that you decide to give to any one of these factors is for you to decide. Not all factors need be present in order to find that the display is lascivious, but more than one factor must be present in order to establish lasciviousness beyond a reasonable doubt. You must make this determination based on the overall content of the visual depiction. You may *not* find that these depictions are lascivious merely because you may be upset by them or because you find them to be in bad taste or because you may believe that the defendant had a nefarious or evil purpose in possessing these items. Your

determination must focus on the depictions themselves and the *intended* effect on the viewer. You may not judge the depictions based on any *actual* effect on the viewer.

(Jury Instructions at 19–21).

The jury returned a verdict of guilty, and in answer to a special interrogatory, found that Government Exhibits 9, 10, 12, and 13 contained depictions of the lascivious display of minors' genitalia. Dauray maintains that these pictures are only fragments of larger photographs, and in the absence of any trial evidence reconstructing the complete photographs, the jury could not have found beyond a reasonable doubt that these pictures involved the use of minors engaged in sexually explicit conduct.

Government Exhibit 9 is a photocopy of two images that appear to be cut out from larger pictures. The top image is a side view of a naked young girl bending over, with her buttocks and torso partially visible to the viewer. The lower image of Exhibit 9 is an extreme close up of a young girl with her legs spread, with three fingers shown touching the genitalia and buttocks. Government Exhibit 10 appears to be a portion of a larger photograph; it depicts a group of several naked girls performing backbends in the outdoors such that their genitalia is easily visible. Government Exhibits 12 and 13 are both extreme close ups of young girls with their legs spread to expose their genitalia, such that nothing but genitalia is pictured; both appear to be part of larger photographs.

Dauray argues that because the exhibits in question are all merely fragments of larger pictures, and in some cases cropped or joined together to form a new image, and the government made no effort to reconstruct the missing portions of the original pictures, a rational jury could not, beyond a reasonable doubt, apply the *Dost* factors to find that the Exhibits 9, 10, 12, and 13 constituted the lascivious display of genitalia. In particular, the defendant

maintains that the full context of the pictures at issue is necessary in order for the jury to make a determination as to their legal status.

Dauray relies primarily on the case of *United States v. Villard,* 700 F.Supp. 803 (D.N.J.1988), *aff'd* 885 F.2d 117 (3rd Cir. 1989) in support of this position. In *Villard,* the jury had no opportunity to view the visual depictions at issue, but rather relied on the testimony of a government witness who described the items in some detail. As the district court in *Villard* explained, the *Dost* factors

> serve to distinguish between the innocent family photo or artistic depiction of a nude child and the victimization of that child in the creation of child pornography.... When a picture does not constitute child pornography, even though it portrays nudity, it does not become child pornography because it is placed in the hands of a pedophile, or in a forum where pedophiles might enjoy it.

*Villard,* 700 F.Supp. at 812 (citations omitted). On appeal, the Third Circuit affirmed the trial court's judgment of acquittal. In doing so, the circuit concluded that, while the government is not necessarily precluded from ever supporting a finding of lasciviousness solely by introducing testimony describing photographs, the sparse verbal description in this case was not sufficient to support a finding that the photographs were lascivious. *See* 885 F.2d at 125–26.

In contrast to *Villard,* however, the jury in this case was presented with the actual visual depictions at issue. In fact, the pictures constituted virtually the only evidence presented in this very brief trial. Out of thirteen visual depictions in evidence, the jury chose four that it unanimously concluded constituted the lascivious display of the genitalia of a minor. While Dauray contends that the visual depictions were insufficient evidence on which to convict him because the pictures were not complete, the Court is well-satisfied that enough remained in each of the four exhibits chosen by the jury to provide sufficient visual information for a rational trier of fact to conclude that any missing portions of the pictures would not alter their application of the *Dost* factors. Examining the exhibits in the light most favorable to the government, a rational jury could find beyond a reasonable doubt that the visual depictions were of the lascivious exhibition of the genitals of minors, no matter what the setting.

One of the images in Exhibit 9 is clearly a young girl's genitalia being touched by three fingers; she is posed to be viewed between her slightly splayed legs so as to expose simultaneously her genital region and her buttocks. This image distinctly depicts the legs separated to expose the genitals, with purposeful placement of the fingers touching the genitals. Taken in isolation from the other image contained in Exhibit 9 (the young nude girl bending over) a rational jury could find beyond a reasonable doubt that there was no further context that could have accompanied or surrounded this image such that it would render the image non-lascivious. In applying the *Dost* factors, while it is unknown whether there were other images surrounding the close-up of the genitalia, it can be concluded from the size and pose of the image that the genitalia was the focal point of the pictures. Because the images in Exhibit 9 are closely cropped, the second of the *Dost* factors—whether the setting or pose is sexually suggestive—is only partially applicable. It can be determined, however, that the pose (separated legs with fingers touching the genitals) is one generally associated with a sexual activity. Similarly, the third factor, whether the minor is depicted in an unnatural pose, considering the age of the minor, is readily discernable even from the fragmentary image. The fourth factor, whether the minor was clothed or nude, is equally apparent even from the partial image available to the jury. As to the fifth factor, whether the pictures suggest sexual coyness or willingness to engage in sexual activity, con-

sidering facial expression, gesture or pose depicted, while any facial expression is not available, the gesture of actual or simulated masturbation is suggestive of a willingness to engage in sexual activity.

Lastly, as to whether the pictures are intended or designed by the photographer to elicit sexual responses from the viewer, even in the absence of the original surroundings of the image, an image of a minor engaging in actual or simulated masturbation, with her buttocks and genitals exposed, is unlikely to have any purpose other than to elicit a sexual response from the viewer. Moreover, while the focus has been on the extent to which Exhibit 9 can be considered "lascivious," it also fulfills the other definition of sexually explicit conduct contained in 18 U.S.C. § 2256(2)(C), which defines within that term actual or simulated masturbation, apart from any consideration of the *Dost* factors.

In Exhibit 10, the image of a group of girls performing gymnastics in the nude, enough background and context remain to rationally apply the *Dost* factors. While the focal point is not of the minors' genitalia, the genitalia is certainly exposed and prominent. The setting—a paved area in the outdoors—is not sexually suggestive or generally associated with a sexual activity. A rational jury could find the pose, however, while perhaps not unusual in a gymnastics class, to be unnatural where it is performed in the nude. As to whether the intended effect was to elicit a sexual response from the viewer, a jury could conclude beyond a reasonable doubt that it was. The genitalia of the girl in the foreground of the picture is pronounced, and the pose is one in which the nude young subjects have thrust their pelvises upward, with the effect that the genitals are unnaturally prominent.

Exhibits 12 and 13 depict very close-up images of the genitalia of young girls. In both images, the subjects have their legs spread apart to display the genitalia, and the camera angle necessarily indicates that the genitals were the focal point of the photographs. While the surroundings of these photographs have been cut away, the remaining images are sufficiently large and prominent to allow the viewer to conclude that even in the absence of the material that has been cropped out, the genitals were the central focus. Similarly, enough remains of the images to conclude that the splayed leg posture is sexually suggestive and unnatural for young subjects.

Based upon the pictures in evidence, a reasonable jury could find that the images contained therein involved the sexually explicit conduct of minors, no matter what the setting. Thus, the fact that the exhibits were partial photographs did not prevent the jury from properly applying the *Dost* factors.

### Conclusion

Accordingly, and for the foregoing reasons, defendant's Motion to Dismiss Indictment [doc. # 13] is DENIED; Motion for Judgment of Acquittal is DENIED [doc. # 18]; and Motion in Arrest of Judgment in DENIED [doc. # 24].

**IT IS SO ORDERED.**