**UNITED STATES of America,**
**Appellee,**

v.

**Charles R. DAURAY, Defendant–**
**Appellant.**

**No. 943, Docket No. 99–1253.**

United States Court of Appeals,
Second Circuit.

Argued: Jan. 14, 2000

Decided: June 15, 2000

Peter A. Clark, Assistant United States Attorney, New Haven, CT (Stephen C. Robinson, United States Attorney for the District of Connecticut, on the brief), for Appellee.

Gary D. Weinberger, Assistant Federal Public Defender, Hartford, CT (Thomas G.

Dennis, Federal Public Defender, on the brief), for Defendant–Appellant.

Before: WINTER, Chief Judge, JACOBS and KATZMANN, Circuit Judges.

JACOBS, Circuit Judge:

Defendant-appellant Charles Dauray was arrested in possession of pictures (or photocopies of pictures) cut from one or more magazines. He was convicted following a jury trial in the United States District Court for the District of Connecticut (Arterton, *J.*) of violating 18 U.S.C. § 2252(a)(4)(B), which punishes the possession of (*inter alia*) "matter," three or more in number, "which contain any visual depiction" of minors engaging in sexually explicit conduct. On appeal from the judgment of conviction, Dauray argues that the wording of § 2252(a)(4)(B)—which has since been amended—is ambiguous as applied to possession of three or more pictures, and that the rule of lenity should therefore apply to resolve this ambiguity in his favor. We agree, reverse the conviction, and direct that the indictment be dismissed.

## BACKGROUND

On May 13, 1994, an officer of the Connecticut Department of Environmental Protection approached Dauray's car in a state park and found Dauray in possession of thirteen unbound pictures of minors. The pictures were pieces of magazine pages and photocopies of those pages. On November 18, 1998, a federal grand jury returned a one-count indictment, charging Dauray with possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The version of the statute then in force punished the possession of "*3 or more* books, magazines, periodicals, films, video tapes, or *other matter*" that have passed in interstate or foreign commerce and "*which contain* any visual depiction" showing (or produced by using) a minor engaged in sexually explicit conduct. 18

U.S.C. § 2252(a)(4)(B) (1994) (amended 1998) (emphases added). The statute defined "sexually explicit conduct" in part as "actual or simulated—lascivious exhibition of the genitals or pubic area of any person." § 2256(2)(E).

Dauray and the government stipulated at trial to the facts that bear upon this appeal. One stipulation provided that "[i] on or about May 13, 1994, Charles Dauray possessed the visual depictions which have been introduced into evidence . . .; and [ii] Charles Dauray was aware of the contents of these visual depictions and thus he knew that genitalia of minors appear in each of them." A second stipulation was that the visual depictions were transported in interstate commerce. The jury therefore had only to decide whether the visual depictions showed "minor[s] engaging in sexually explicit conduct," *i.e.*, whether they depicted the "lascivious exhibition of the genitals or pubic area." §§ 2252(a)(4)(B)(i), 2256(2)(E). The jury found Dauray guilty, and by special interrogatory specified the four of the thirteen pieces of evidence that met the statutory definition.

The district court then considered Dauray's pretrial motion, on which the court had earlier reserved decision, to dismiss the indictment for failure to charge an offense. *See* Fed.R.Crim.P. 12(b)(2). Dauray argued that each of the four pictures specified by the jury was in itself a "visual depiction" and therefore could not be "other matter which contain any visual depiction." Therefore, he reasoned, the indictment failed to charge an offense. The district court concluded that the pictures Dauray possessed were "other matter" within the plain meaning of § 2252(a)(4)(B), and for the same reason denied Dauray's request to apply the rule of lenity. *See United States v. Dauray*, 76 F.Supp.2d 191, 195 (D.Conn.1999).

Dauray was sentenced on April 30, 1999 to 36 months of imprisonment, followed by three years of supervised release, and a $50 special assessment.

## DISCUSSION

The statute under which Dauray was convicted has since been amended. At the time, the statute provided in pertinent part:

> (a) Any person who—
>
> (4) . . .
>
> (B) knowingly possesses *3 or more* books, magazines, periodicals, films, video tapes, or *other matter which contain any visual depiction* that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—
>
> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (ii) such visual depiction is of such conduct;
>
> shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(4)(B) (1994) (emphasis added).

The question presented on appeal is whether individual pictures are "other matter which contain any visual depiction" within the meaning of § 2252(a)(4)(B). This question of first impression is one of law, which we review *de novo*. *See United States v. Alfonso*, 143 F.3d 772, 775 (2d Cir.1998). Notwithstanding diligent efforts to construe § 2252(a)(4)(B), we conclude that it can be read either to support or to defeat this indictment. We therefore apply the rule of lenity to resolve the ambiguity in Dauray's favor.

### I.

A. *Plain Meaning.*

Our starting point in statutory interpretation is the statute's plain meaning, if it has one. *See United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir.

1994). Congress provided no definition of the terms "other matter" or "contain." We therefore consider the ordinary, common-sense meaning of the words. *See Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir.1992).

Among the several dictionary definitions of the verb "to contain," Dauray presses one, and the government emphasizes another.

(i) "To contain" means "to have within: hold." Webster's Third New International Dictionary 491 (unabridged ed.1981). Dauray argues that a picture is not a thing that contains itself. Thus in the natural meaning of the word, a pictorial magazine "contains" pictures, but it is at best redundant to say that a picture "contains" a picture.

(ii) "To contain" also means "to consist of wholly or in part: comprise; include," *id.*, and the government argues that each underlying piece of paper is "matter" (as opposed perhaps to anti-matter) that contains the picture printed on it. It is also possible, applying this latter meaning, to say that each picture, composed of paper and ink, is matter that contains its imagery.

The district court assumed that Congress meant to employ both meanings. *See Dauray*, 76 F.Supp.2d at 194 ("The word 'contain' as used in the statute can mean both that items that *enclose* or *hold* visual depictions of minors engaged in sexually explicit conduct are included within the statute's ambit (such as a book), and that items that are *comprised* of such visual depictions are also included (such as a photograph)."). The district court thus recognized that one critical word of the statute lends itself to (at least) two meanings, only one of which can sustain the conviction, but then assumed, without resort to tools of construction, that the statutory language was drafted to support every meaning that would impose punishment. Resort to tools of construction is necessary in this case, however, to

decide whether the language used gave adequate notice that this defendant's conduct was forbidden by this statute.

■ The plain meaning of another critical term—"other matter"—is also elusive. The dictionary defines "matter" as "the substance of which a physical object is composed." Webster's Third New International Dictionary 1394. Everything is more or less organized matter (as Napoleon observed). But Congress employed "matter" in a specific context, as the final, general term at the end of a list. We must "consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme. '[T]he meaning of statutory language, plain or not, depends on context.' " *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (quoting *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)). Other courts have construed "other matter" in § 2252(a)(4)(B) as "simply something which, at a minimum, must be capable of containing a visual depiction," *United States v. Vig,* 167 F.3d 443, 447 (8th Cir.), *cert. denied,* ── U.S. ──, ──, 120 S.Ct. 146, 145 L.Ed.2d 125 (1999); *accord United States v. Hall,* 142 F.3d 988, 999 (7th Cir.1998), or as "physical media on which are contained . . . images," *United States v. McKelvey,* 203 F.3d 66, 71 (1st Cir.2000); *accord United States v. Lacy,* 119 F.3d 742, 748 (9th Cir.1997). These definitions are unhelpful for our purposes.

There is no doubt that a pictorial magazine is "matter" that "contains" visual images. But no court that has construed § 2252(a)(4)(B) has considered whether a loose photograph clipped from such a magazine is itself "matter" that "contains" a visual image.[1] The First Circuit recently held that a single negative film strip containing three images constituted only one piece of "matter" under § 2252(a)(4)(B). *See McKelvey,* 203 F.3d at 71. The court noted that "[h]ad Congress meant for the number of images to be the relevant criterion, it would have likely stated as much." *Id.* The case concerned the character of singular "matter" containing multiple images, not whether each image—if loosed from the container—could itself constitute prohibited "matter."

Every other case that construes the term "other matter" has involved whether an individual computer graphics file is a "matter." *Compare Vig,* 167 F.3d at 448 (holding that individual files are "other matter"), *and Hall,* 142 F.3d at 999 (same), *with Lacy,* 119 F.3d at 748 (holding that computer files are not "other matter," but a hard drive and a floppy disk are). These cases consider whether a computer file has the capacity to "contain a visual depiction," whether the general term "other matter" extends the statute's prohibition to a medium that is unenumerated in the list (and unlikely to have been thought of when the statute was drafted), and whether the proper analog to a graphics file is a page in a book or a book in a library. These cases have no evident bearing on whether a single magazine (which it was no crime to possess at the time of Dauray's arrest, no matter how many pages and pictures it contained) can become prohibited material simply by detaching the staples that bind the pages.

This Court's recent decision in *United States v. Demerritt,* 196 F.3d 138 (2d Cir. 1999), is inapposite for similar reasons. In *Demerritt,* we considered the scope of § 2G2.4(b)(2) of the Sentencing Guidelines, which provides for a two-level enhancement if "the offense involved possessing

---

1. The First and Eighth Circuits have affirmed convictions under § 2252(a)(4)(B) for the possession of three or more individual pictures. *See United States v. Robinson,* 137 F.3d 652, 653–54 (1st Cir.1998); *United States v. Paton,* 110 F.3d 562, 564 (8th Cir.1997). However, the issue raised by Dauray was not considered in those cases and the courts assumed without deciding that the defendants' conduct came within the ambit of the statute's prohibition. We are reluctant to assume that the courts decided this question of law *sub silentio. See Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103, 113 (2d Cir.1988).

ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor." U.S.S.G. § 2G2.4(b)(2). Section 2G2.4(b)(2) tracks the language of § 2252(a)(4)(B), except for the quantity (10 rather than 3) and the catch-all term ("items" rather than "matter"). Joining every court to consider this question, we held that under the plain meaning of § 2G2.4(b)(2), computer graphics files are "items." *See Demerritt,* 196 F.3d at 143; *accord United States v. Fellows,* 157 F.3d 1197, 1200–02 (9th Cir. 1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 133, 145 L.Ed.2d 112 (1999); *Hall,* 142 F.3d at 997–99; *see also United States v. Wind,* 128 F.3d 1276, 1278 (8th Cir. 1997). We defined "items" as '"discrete containers for visual depictions capable of being separately manipulated and distributed," and then concluded that computer graphics files satisfied this definition. *Id.* at 141 (quoting *Fellows,* 157 F.3d at 1201) (internal quotation marks omitted).

*Demerritt* cites with approval the Ninth Circuit's reasoning in *Fellows* that "[v]isual depictions in a computer are compiled and stored in graphics files, much *like photographs are compiled and stored in books or magazines* . . . ." *Id.* at 141 (quoting *Fellows,* 157 F.3d at 1200) (emphasis added and internal quotation marks omitted). *Demerritt*'s "discrete containers" definition is suggestive, but it does not resolve this case: a fragment of a magazine page is "capable of being separately manipulated and distributed," but whether the fragment is also a "discrete container[ ] for visual depictions" again turns on the definition of "to contain."

### B. *Canons of Construction.*

■ Because the government and Dauray each rely on a reasonable meaning of § 2252(a)(4)(B), we resort to the canons of statutory interpretation to help resolve the ambiguity. *See United States v. Turkette,* 452 U.S. 576, 581, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

■ 1. *Lists and Other Associated Terms.* Two related canons inform our analysis of the meaning of "other matter." First, the meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases (*noscitur a sociis* ). *See, e.g., Dole v. United Steelworkers of America,* 494 U.S. 26, 36, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990). Second, "where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated" (*ejusdem generis* ). *Turkette,* 452 U.S. at 581, 101 S.Ct. 2524; *see United States v. Carrozzella,* 105 F.3d 796, 800 (2d Cir. 1997). In this case, "other matter" should be construed to complete the class of items or things in the list preceding it, namely "books, magazines, periodicals, films, [or] video tapes."

Dauray argues that the listed items form a category of picture containers that can enclose within them multiple visual depictions. Because a picture taken from a magazine is not itself a picture container, like books or magazines, but is rather a thing abstracted from its container, Dauray contends that a picture in itself cannot be considered "other matter" within the meaning of the statute, and that possession of three of them is not prohibited.

But these canons equally support the government's argument. The list—at a sufficient level of generality, and completed by the catch-all "other matter"—can be read to include any physical medium or method capable of presenting visual depictions. A picture cut from a magazine, considered as paper and ink employed to exhibit images, can be said to contain an image or as many images as can be perceived in a picture or photograph, which depends on how one looks at it.

■ 2. *Statutory Structure.* "[A] statute is to be considered in all its parts when construing any one of them." *Lexecon Inc. v. Milberg Weiss Bershad Hynes &*

*Lerach,* 523 U.S. 26, 36, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). The Protection of Children Against Sexual Exploitation Act contains four substantive subsections (of which § 2252(a)(4) is one): § 2252(a)(1) prohibits the interstate transportation of child pornography; § 2252(a)(2) prohibits the receipt or distribution of it; and § 2252(a)(3) prohibits its sale or possession with intent to sell. Only § 2252(a)(4) specifies that the conduct forbidden involves "books, magazines, periodicals, films, video tapes or other matter which contain" the pornography. The others more simply forbid "any visual depiction" of child pornography, period. Dauray and the government both find support in this statutory structure.

According to Dauray, the different drafting demonstrates that Congress knew how to prohibit the possession of individual pictures if it wanted to do so. The plain language of the other sections—each of which targets "any visual depiction"—is such that if Dauray had transported, distributed or sold the pictures he merely possessed, he would have violated the law unambiguously.

But the government could argue: that the transport, distribution and sale of child pornography are most harmful to children, and were therefore prohibited regardless of the medium or number of visual depictions; that Congress did not want to cast so fine a net in the context of mere possession in order to assure that the accidental possessor of one piece of pornography avoids liability while the collector does not; and that Congress implemented the distinction by punishing only persons who possess a threshold number (three) of anything that contains pornographic images, *i.e.,* "books, magazines, periodicals, films, video tapes or other matter." If the statute simply read "3 or more visual depictions," then the accidental possession of one pictorial magazine could violate the statute. The difference between the language in § 2252(a)(4) and the other subsections is therefore (according to this

view) fully consistent with a congressional intent to punish the possession of three or more individual pictures, postcards, posters, still frames, or even fragments of magazine pages.

■ 3. *Statutory Amendment.* A statute should be construed to be consistent with subsequent statutory amendments. *See Bowen v. Yuckert,* 482 U.S. 137, 149–51, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In 1998, Congress amended the statute by replacing "3 or more" with "1 or more" of the same list of "books, magazines, periodicals, films, video tapes or other matter." *See* Protection of Children from Sexual Predators Act of 1998, Pub.L. No. 105–314, § 203(a)(1), 112 Stat. 2974, 2978 (codified as amended at 18 U.S.C. § 2252(a)(4)(B) (West Supp.1999)). At the same time, Congress established an affirmative defense for a defendant who could show that he possessed "less than three matters *containing*" child pornography and "promptly and in good faith ... took reasonable steps to destroy" the pornography or report it to law enforcement officials without disseminating it to others. *Id.* (codified at 18 U.S.C. § 2252(c)) (emphasis added).

According to the government, the list, with its catch-all of "other matter," is designed to reach even an individual photograph. That could have been accomplished without the list, however, by an amendment that simply prohibits possession of "1 or more visual depictions." Dauray argues with some force that the list is superfluous post-amendment unless it serves to distinguish a "container" such as a magazine, from its contents, such as individual pictures cut from the magazine's pages. *See United States v. Anderson,* 15 F.3d 278, 283 (2d Cir.1994) ("[C]ourts will avoid statutory interpretations that render provisions superfluous."). The government on this appeal makes no response to this argument, which is not to say that no response can be made.

4. *Avoiding Absurdity.* A statute should be interpreted in a way that avoids absurd results. *See, e.g., United States v. Hendrickson,* 26 F.3d 321, 336 (2d Cir. 1994). Whichever interpretation one accepts, the statute tends to produce absurd results. Dauray's reading would prohibit the possession of three books, each of which contains one image, but allow the possession of stacks of unbound photographs. Equally absurd, the government's reading would prohibit the possession of three individual photographs (unless they were mounted in a single album), but allow the possession of two thick illustrated tomes.

## C. *Legislative History.*

When the plain language and canons of statutory interpretation fail to resolve statutory ambiguity, we will resort to legislative history. *See, e.g., Lee v. Bankers Trust Co.,* 166 F.3d 540, 544 (2d Cir. 1999). Unfortunately, "[e]xamination of [§ 2252's] legislative history ... reveals no insight as to what Congress intended the precise scope of 'other matter' to be." *Vig,* 167 F.3d at 449 (citing 1990 U.S.C.C.A.N. 6472 *et seq.*).

## II.

Due process requires that a criminal statute "give fair warning of the conduct that it makes a crime." *Bouie v. City of Columbia,* 378 U.S. 347, 350–51, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). "[B]efore a man can be punished as a criminal under the Federal law his case must be 'plainly and unmistakably' within the provisions of some statute." *United States v. Plaza Health Labs., Inc.,* 3 F.3d 643, 649 (2d Cir.1993) (quoting *United States v. Gradwell,* 243 U.S. 476, 485, 37 S.Ct. 407, 61 L.Ed. 857 (1917)) (internal quotation marks omitted). The rule of lenity springs from this fair warning requirement. "In criminal prosecutions the rule of lenity requires that ambiguities in the statute be resolved in the defendant's favor." *Id.;* *see also United States v. Velastegui,* 199 F.3d 590, 593 (2d Cir.1999) ("If we find that the ambit of the criminal statute is ambiguous, the ambiguity should be resolved in favor of lenity."). This expedient "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier,* 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

But "[b]ecause the meaning of language is inherently contextual," the Supreme Court has "declined to deem a statute 'ambiguous' for purposes of lenity merely because it was possible to articulate a construction more narrow than that urged by the Government." *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). "Instead, [the Court has] always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Id.* (quoting *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)). It is a "doctrine of last resort." *United States v. Hescorp, Heavy Equip. Sales Corp.,* 801 F.2d 70, 77 (2d Cir.1986); *see also United States v. Granderson,* 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (applying the rule of lenity "where text, structure, and history fail to establish that the Government's position is unambiguously correct.").

Here, we have done what we can. We have read the plain language of § 2252(a)(4)(B), considered the traditional canons of statutory construction, looked for legislative history, and canvassed potentially relevant case law. And we are left with no more than a guess as to the proper meaning of the ambiguous language here.

While it is true that "our role as a court is to apply the provision as written, not as we would write it," *Demerritt,* 196 F.3d at 143, the statute's ambiguity makes it impossible for us to apply the

provision in this case without simply guessing about congressional intent. *Cf. Vig,* 167 F.3d at 451 (Arnold, M., dissenting) (arguing for the application of the rule of lenity in a computer files case because § 2252(a)(4)(B) is "grievously ambiguous, and, after looking to the arguments of the parties and the legislative history, we still can make 'no more than a guess' as to which of two reasonable interpretations would accomplish Congress's intention"). Indeed, the government conceded at oral argument that Dauray would not have violated the statute had his pictures been found in a photo album rather than in an unbound stack.

The government did not show that the pictures at issue were taken from more than a single magazine. At the time of Dauray's arrest, the statute did not forbid possession of such a magazine. Nor did the statute give Dauray notice that removing several pictures from the magazine, and keeping them, would subject him to criminal penalties. This result is unconstitutionally surprising. Under these circumstances, we must apply the rule of lenity and resolve the ambiguity in Dauray's favor.

## CONCLUSION

For the foregoing reasons, the judgment is hereby reversed.

KATZMANN, Circuit Judge, dissenting.

I respectfully dissent from the majority's well-argued opinion. I would not apply the rule of lenity in this case. In *Muscarello v. U.S.,* 524 U.S. 125, 118 S.Ct. 1911, 1919, 141 L.Ed.2d 111 (1998), the Supreme Court stated that the "simple existence of some statutory ambiguity . . . is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree." The Court continued: "To invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute." *Id.* at 1919 (internal quotation marks omitted). I do not think that there is such a "grievous ambiguity or uncertainty" in the statute before us, or that we can make "no more than a guess as to what Congress intended." *United States v. Wells,* 519 U.S. 482, 499, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). The statute requires that the visual depiction be contained within books, magazines, periodicals, films, video tapes, or other matter. The word "contain" in the statute, consistent with its purposes, could mean both "comprise" and "hold" and still, in my view, not lead to "grievous ambiguity or uncertainty." Nothing in the statute itself or in the legislative record suggests that Congress did not intend to use both ordinary meanings of the word "contain." It makes sense, given the statute's purposes, that a photograph could be understood—quite naturally—to "contain" a visual depiction.

I fully agree with the majority that the statute could result in some incongruous interpretations. But in the end, I conclude that we must "apply the provision as written, not as we would write it." *United States v. Demerritt,* 196 F.3d 138, 143 (2d Cir.1999).