The CITY OF NEW YORK, Plaintiff,

v.

**BERETTA U.S.A. CORP.,
et al., Defendants.**

No. 00–CV–3641.

United States District Court,
E.D. New York.

April 27, 2006.

investigator's fees.

Corporation Counsel of the City of New York by Melanie Ash, June R. Buch, Richard J. Costa, Eric Proshansky, Gail P. Rubin, New York City, Michael Elkin, Thomas Lane, Thelen, Reid & Priest, LLP, New York City, for Plaintiff City of New York.

Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC by Lawrence S. Greenwald, Baltimore, MD, for Defendant Beretta U.S.A. Corp.

Friday, Eldredge & Clark, LLP by Jonann E. Chiles, Jamie Huffman Jones, Little Rock, AR, Renzulli, Pisciotti & Renzulli, LLP, by John F. Renzulli, Leonard S. Rosenbaum, Scott Charles Allan, New York, NY, for Defendant Browning Arms Co.

Jones Day, by Thomas E. Fennell, Mark R. Hall, Joseph Anthony Strazzeri, Kelly J. Hunt, Patrick Carew, Paula Reichenstein, Michael L. Rice, Patrick G. Broderick, Dallas, TX, Pino & Associates, LLP by Thomas E. Healy, White Plains, NY, for Defendant Colt's Manufacturing Co., Inc.

Budd Larner, P.C. by Bridgette E. Eckerson, Budd Larner, Prescott L. Nottingham, Timothy A. Bumann, Jennifer C. Kane, Kathleen C. Marchetti, J. Clayton Cheshire, Atlanta, GA, for Defendants Forjas Taurus, S.A. and Taurus International Manufacturing, Inc.

Renzulli, Pisciotti & Renzulli, LLP by Christopher Renzulli, John F. Renzulli, Scott C. Allan, New York, NY, for Defendant Glock, Inc.

Tarics & Carrington, PC by Michael J. Zomcik, Houston, TX, for Defendant Phoenix Arms.

Wilson, Elser, Moskowitz, Edelman & Dicker, by Robert Laurent Joyce, New York, NY, for Defendant Sigarms, Inc.

Greenberg Traurig, LLP by Alan Mansfield, New York, NY, Pietragallo, Bosick & Gordon, By: Clem C. Trischler, Robert R. Leight, Pittsburgh, PA, Shook Hardy & Bacon, LLP, by Stacey Elaine Deere, Jeffrey Scott Nelson, Tina Marie Schaefer, Kansas City, MO, for Defendant Smith & Wesson Corp.

Wildman, Harrold, Allen & Dixon, LLP by James P. Dorr, Sarah Liddell Olson, Chicago, IL, Gallagher Gosseen Faller Kaplan & Crowle by William Edward Vita, Garden City, NY, for Defendant Sturm, Ruger & Co., Inc.

The Chiafullo White Group, LLP by Christopher M. Chiafullo, Watchung, NJ, for Defendants AcuSport Corp.; Alamo Leather Goods, Inc.; Bangers, L.P.; Bill Hicks & Co.; Brazas Sporting Arms, Inc.; Camfour Inc.; Chattanooga Shooting Supplies, Inc.; Davidson's Supply Co., Inc.; Dixie Shooters Supply, Inc.; Ellet Brothers, Inc.; Euclid Ave. Sales Co.; Faber Brothers, Inc.; Glen Zanders Fur and Sporting Goods Co.; Hicks, Inc.; Kiesler Police Supply, Inc.; Lew Horton Distributing Co.; Lipsey's Inc.; MKS Supply Co.; Riley's, Inc.; RSR Group, Inc.; Ron Shirk's Shooter's Supplies, Inc.; Southern Ohio Gun, Inc.; Sports South, Inc.; Valor Corp.; Walter Craig, Inc.; Williams Shooter's Supplies.

United States Attorney's Office, Eastern District of New York by Elliot M. Schachner, Brooklyn, NY, for United States.

## MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

Table of Contents:

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 519

II. Procedural and Legislative Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 520

III. The 2006 Rider . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 522

IV. Arguments of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 523

V. Interpretation of the 2006 Rider . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 523
   A. Plain Meaning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 524
      1. Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 524
      2. Application of Law to Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 527
   B. Congressional Policy Towards the Administration of Justice . . . . . . . . . . . . . . . . 527
   C. Legislative History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 528
   D. *City of Chicago v. Department of the Treasury* . . . . . . . . . . . . . . . . . . . . . . . . . 528

VI. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 529

## I. Introduction

The City of New York ("City") sues the handgun industry for committing a nuisance by reason of its improper merchandising methods that create unnecessary hazards to people in the City. All parties and the court have long assumed that the City's case would rely primarily on certain data generated by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF trace data"), as in similar cases brought by other plaintiffs. *See, e.g., NAACP v. AcuSport, Inc.,* 271 F.Supp.2d 435 (E.D.N.Y.2003). Discovery was conducted—and completed—on this assumption. All ATF trace data necessary to try the case has long been available to the parties.

On November 22, 2005, there was adopted the latest in a series of riders ("the 2006 rider") appended to appropriations bills and claimed by defendants to limit the disclosure and use of ATF trace data. Science, State, Justice, Commerce, and Related Agencies Appropriations Act of 2006, Pub.L. No. 109–108, 119 Stat. 2290. On February 8, 2006, this court

issued an order requiring the parties to show cause why the City's suit should not be dismissed on the basis of the 2006 rider, which is read by the defendants as excluding from evidence the ATF trace data in the hands of the parties.

The parties have submitted briefs arguing the applicability and constitutionality of the 2006 rider, as well as the court's jurisdiction to consider the issue during the pendency of an appeal of a previous decision in the case. *See City of New York v. Beretta U.S.A. Corp.*, 401 F.Supp.2d 244 (E.D.N.Y.2005) (denying defendants' motion to dismiss under the Protection of Lawful Commerce in Arms Act, Pub.L. No. 109–92, 11,9 Stat.2095). The United States intervened pursuant to 28 U.S.C. § 2403(a) and filed a brief defending the rider's constitutionality. A preliminary hearing was held on March 3, 2006. *See* Tr. of Conference of Mar. 3, 2006. The parties agree that further oral argument is not necessary.

This court has jurisdiction to consider the 2006 rider's applicability and constitutionality. *City of New York v. Beretta U.S.A. Corp.*, 234 F.R.D. 46 (E.D.N.Y. 2006). The court now holds that the rider does not prevent the City's action from proceeding. The restrictions in the 2006 rider cannot be read to encompass the trace data already in the City's possession and sought to be admitted in this pending case. It is not necessary to, and the court does not, decide the issue of the 2006 rider's constitutionality.

## II. Procedural and Legislative Facts

The complaint was filed in June of 2000. On April 20, 2004, the City served a subpoena upon the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to compel the production of licensing and tracing data previously produced in *NAACP v. Acusport Corp.*, 210 F.R.D. 268 (E.D.N.Y.2002), a public nuisance action brought against gun manufacturers and distributors by a private advocacy group. In the *NAACP* action, ATF produced firearms data for the period 1995 through 2000. *Id.* at 269. The April 20, 2004 subpoena called for the data produced in *NAACP,* updated through 2003.

ATF objected to the April 20, 2004 subpoena on the ground that the subpoenaed documents were immune from disclosure under the terms of a rider appended to the Consolidated Appropriations Act of 2004 ("the 2004 rider"). The 2004 rider provided:

> [N]o funds appropriated under this or any other Act may be used to disclose to the public the contents or any portion thereof of any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of section 923(g) of title 18, United States Code, except that this provision shall apply to any request for information made by any person or entity after January 1, 1998[.]

Pub.L. No. 108–199, 118 Stat. 3, 53.

ATF argued that this provision prohibited the disclosure to the City or other plaintiffs of any trace data, multiple sales records, or other federal firearms licensing information required to be kept pursuant to section 923(g) of Title 18 of the United States Code. *City of New York v. Beretta U.S.A. Corp.*, 222 F.R.D. 51, 54 (E.D.N.Y. 2004).

The magistrate judge rejected defendants' claim, holding that the 2004 rider did not bar disclosure of the information to the plaintiffs because the plaintiffs, as civil litigants seeking disclosure of the information in the context of a judicial proceeding, were not members of the "public" as the term was used in the rider. *Id.* at 57–60.

The magistrate judge also held that the rider, by its terms, did not in fact prohibit *disclosure* of the information sought, but rather prohibited "the use, by [ATF], of appropriated funds in making the disclosure." *Id.* at 59. That decision was affirmed by the district court. *City of New York v. Beretta U.S.A. Corp.*, 222 F.R.D. 48 (E.D.N.Y.2004). The Court of Appeals for the Second Circuit denied ATF's petition for a writ of mandamus seeking to overturn the district court decision. *In re Bureau of Alcohol, Tobacco, Firearms and Explosives*, 04–3738–op (2d Cir. Aug. 14, 2004).

On October 14, 2004, ATF produced data to the City on compact discs. Because the City concluded that this data was incomplete and did not comply with the terms of the April 20, 2004 subpoena, on February 15, 2005, the City moved to compel ATF to produce the missing data.

In response to this motion, ATF took the position that none of the information sought by the City could be produced because it was rendered immune from disclosure by the provisions of a new rider appended to the Consolidated Appropriations Act of 2005 ("the 2005 rider"). The 2005 rider provided:

> [N]o funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), *to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding;* except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title)[.]

Pub.L. No. 108–447, 118 Stat. 2809, 2859–60 (emphasis added to show relevant 2005 additions).

Although the 2005 rider was not passed until December 8, 2004—well into discovery and more than 6 months after the magistrate judge's order requiring ATF to produce the data called for in the April 20, 2004 subpoena—ATF maintained that the rider's restrictions were applicable to any future production of data, including production of the data already ordered by the magistrate judge. *See City of New York v. Beretta U.S.A. Corp.*, 228 F.R.D. 134, 137, 141 (E.D.N.Y.2005).

The magistrate judge rejected the argument by ATF that the 2005 rider precluded it from supplying the missing informa-

tion to the City, holding that the rider could not "retroactively relieve [ATF] of a responsibility that [she] ordered [it] to respond to" before the rider was passed. Tr. of Order of Feb. 22, 2005 at 33–34. The district court affirmed this decision. *Beretta*, 228 F.R.D. at 146–47. *See also City of New York v. Beretta U.S.A. Corp.*, 228 F.R.D. 147 (E.D.N.Y.2005) (granting ATF's motion for reconsideration and reaffirming prior decision).

Following the April 2005 rulings, ATF turned over the missing data to the City. Extensive discovery and motion practice continued, and, over five years after the complaint was first filed, the case was found ready for trial. Trial was set to begin on November 28, 2005.

On October 26, 2005 the President of the United States approved the Protection of Lawful Commerce in Arms Act, Pub.L. No. 109–92, 119 Stat.2095 ("PLCAA"). The PLCAA, which was immediately effective, requires that a "qualified civil liability action that is pending on the date of enactment ... shall be immediately dismissed." PLCAA § 3(b). Hours after the PLCAA was signed, defendants moved for a permanent stay and for dismissal of this case.

Defendants' motion to dismiss was denied on December 2, 2005 on the grounds that the present case fell under an explicit exception to the PLCAA's litigation bar. *See Beretta*, 401 F.Supp.2d at 298. The question of the applicability of the PLCAA was certified for interlocutory appeal by the court, which also granted a temporary discretionary stay. *See* 28 U.S.C. § 1292(b).

The 2006 rider was passed on November 22, 2005, in-between the passage of the PLCAA and the court's order denying the defendants' motion to dismiss. It was not brought to the court's attention until February of 2006. The court has lifted the discretionary stay in order to permit consideration of the 2006 rider's effect on the City's case.

### III. The 2006 Rider

The 2006 rider is identical to the 2005 rider, but for the addition of the italicized language:

> [N]o funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery, *shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based upon such data, in any civil action pending on or filed after the effective date of this Act* in any State (including the District of Columbia) or Federal court or in any administrative proceeding other than a proceeding com-

menced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title) . . .

Pub.L. No. 109–108, 119 Stat. 2290, 2295–96 (emphasis added to show relevant 2006 additions).

For ease of reference, the new restrictions embodied in the italicized language will be referred to as the "evidentiary restrictions." It is these restrictions that are at issue here.

## IV. Arguments of the Parties

The primary dispute between the parties turns on the interpretation of the phrase "such data," as it is used in the 2006 rider's evidentiary restrictions, which state that "*all such data* . . . shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based upon *such data,* in any civil action pending on or filed after the effective date of this Act" (emphasis added). "Such data" has two possible grammatical antecedents: the phrase could refer to the entirety of ATF trace data described in the first few lines of the 2006 rider, or it could refer to the more limited subset of trace data that ATF is permitted to use appropriated funds to disclose, namely, the data revealed in future disclosures to law enforcement recipients. The first referent is relied on by the defendants; the second by the plaintiff.

Defendants maintain that "such data" refers to all ATF trace data and that the evidentiary restrictions therefore bar the admission into evidence of any ATF trace data, no matter when or to whom that data has been or will be disclosed. Because the present litigation is a federal civil action that was pending on the effective date of the appropriations act, defendants conclude that the 2006 rider bars the use in this case of the trace data already disclosed to the City. *See* Defendants' Memorandum of Law Regarding the Constitutionality and Applicability to This Litigation of the November 22, 2005 Act of Congress ("Defs' Mem") at 3–5.

The City contends that "such data" does not refer to all ATF trace data, but rather to the data to be revealed in future disclosures to law enforcement recipients. Because the data sought to be admitted by the City has already been disclosed and is not data that will be revealed by ATF in future disclosures to law enforcement recipients, the City maintains that the data may be used in this case, despite the fact that the action was pending on the effective date of the appropriations act. *See* Memorandum of Law of Plaintiff the City of New York in Opposition to the Court's Order to Show Cause Why the Case Should Not Be Dismissed Pursuant to the November 22, 2005 Act of Congress ("Pl.'s Mem.") at 5–9.

## V. Interpretation of the 2006 Rider

■ The question of the applicability of the evidentiary restrictions to the data at issue may be addressed in a number of ways. The court begins with the plain language of the statute. *See, e.g., United States v. Dauray,* 215 F.3d 257, 260 (2d Cir.2000); *United States v. Piervinanzi,* 23 F.3d 670, 677 (2d Cir.1994). In determining the meaning of statutory terms, a court should "consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme. The

meaning of statutory language, plain or not, depends on context." *Dauray*, 215 F.3d at 261. *See also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

■ Next, the court may consider the language of the statute in light of broader congressional policies and Congress' awareness of its own responsibility to promote the ends of justice in the federal court system.

Finally, resort to legislative history is appropriate. *See, e.g., Dauray*, 215 F.3d at 264.

■ Here, all three methods of statutory interpretation lead to the same conclusion. The evidentiary restrictions do not encompass the trace data already in the City's possession and sought to be admitted in this pending case.

A. Plain Meaning

1. Law

The 2006 rider is a budgetary provision, designed to ensure the appropriate use of federal funds. *Cf. Beretta*, 222 F.R.D. at 59; *City of Chicago v. United States Dep't of the Treasury, Bureau of Alcohol, Tobacco, and Firearms*, 384 F.3d 429, 431 (7th Cir.2004). It was enacted as part of an appropriations bill. It comes after a provision making appropriations for the ATF and is part of a series of restrictions on the future use of those appropriated funds. Broken up into its constituent elements, the section of the appropriations act in which the rider appears reads as follows:

[1] For necessary expenses of the Bureau of Alcohol, Tobacco, Firearms and Explosives, including the purchase of not to exceed 822 vehicles for police-type use, of which 650 shall be for replacement only; not to exceed $ 40,000 for official reception and representation expenses; for training of State and local law enforcement agencies with or without reimbursement, including training in connection with the training and acquisition of canines for explosives and fire accelerants detection; and for provision of laboratory assistance to State and local law enforcement agencies, with or without reimbursement, $ 923,613,000, of which not to exceed $ 1,000,000 shall be available for the payment of attorneys' fees as provided by 18 U.S.C. 924(d)(2); and of which $ 10,000,000 shall remain available until expended:

[2] Provided, That *no funds appropriated herein shall be available* for salaries or administrative expenses in connection with consolidating or centralizing, within the Department of Justice, the records, or any portion thereof, of acquisition and disposition of firearms maintained by Federal firearms licensees:

[3] Provided further, That *no funds appropriated herein shall be used* to pay administrative expenses or the compensation of any officer or employee of the United States to implement an amendment or amendments to 27 CFR 178.118 or to change the definition of "Curios or relics" in 27 CFR 178.11 or remove any item from ATF Publication 5300.11 as it existed on January 1, 1994:

[4] Provided further, That *none of the funds appropriated herein shall be available* to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. 925(c):

[5] Provided further, That *such funds shall be available* to investigate and act upon applications filed by corporations for relief from Federal firearms disabili-

ties under section 925(c) of title 18, United States Code:

■ Provided further, That *no funds made available by this or any other Act may be used* to transfer the functions, missions, or activities of the Bureau of Alcohol, Tobacco, Firearms and Explosives to other agencies or Departments in fiscal year 2006:

■ Provided further, That *no funds appropriated under this or any other Act with respect to any fiscal year may be used* to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based upon such data, in any civil action pending on or filed after the effective date of this Act in any State (including the District of Columbia) or Federal court or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title):

■ Provided further, That *no funds made available by this or any other Act shall be expended* to promulgate or implement any rule requiring a physical inventory of any business licensed under section 923 of title 18, United States Code:

■ Provided further, That *no funds under this Act may be used* to electronically retrieve information gathered pursuant to 18 U.S.C. 923(g)(4) by name or any personal identification code:

■ Provided further, That *no funds authorized or made available under this or any other Act may be used* to deny any application for a license under section 923 of title 18, United States Code, or renewal of such a license due to a lack of business activity, provided that the applicant is otherwise eligible to receive such a license, and is eligible to report business income or to claim an income tax deduction for business expenses under the Internal Revenue Code of 1986:

■ Provided further, That *of the amount provided under this heading, $ 5,000,000, to remain available until expended, shall be for* the expenses necessary for site selection, architectural design, site preparation and the development of a total cost estimate for the construction of a permanent site for the

National Center for Explosives Training and Research: Provided further, That any funds remaining shall be applied to the construction of the Center: Provided further, That the Director of the ATF, when considering site selection shall consider a site collocated with other law enforcement and Federal Government entities that provide similar training and research.

Pub.L. No. 109–108, 119 Stat. 2290, 2295–96 (emphasis added). Each of the above-quoted paragraphs—including paragraph [7], the 2006 rider—deals with the expenditure of federal monies.

When the evidentiary restrictions are considered in this context, as they must be, *see, e.g., Dauray*, 215 F.3d at 261; *K Mart Corp.*, 486 U.S. at 291, 108 S.Ct. 1811, the meaning of the phrase "such data" is apparent. "Such data" can only refer to the data to be disclosed to law enforcement recipients, since only that data has a connection to federal expenditures. The 2006 rider bars the use of appropriated funds for the future disclosure of ATF trace data to anyone besides law enforcement recipients and then imposes further restrictions in order to ensure the proper use of data that has been so disclosed. The rider has no application to data that is not to be disclosed through the use of federally appropriated funds.

This reading of the phrase "such data" is confirmed by an examination of the grammatical structure of the 2006 rider. First, an interpretation of "such data" as referring to the data disclosed to law enforcement recipients allows proper parallelism within the rider's various clauses. In the rider's first set of restrictions—requiring that ATF disclose "only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding"—the phrase "such information" can only refer to the data revealed in future disclosures to law enforcement recipients; this is apparent from the reference to the "law enforcement agency requesting the disclosure." If the phrase "such data" in the later restrictions also refers to the data to be disclosed to law enforcement recipients, "such" data or "such" information has the same meaning throughout the rider. *See, e.g., United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear."); *Sorenson v. Sec'y of the Treasury*, 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) ("identical words used in different parts of the same act are intended to have the same meaning").

Second, Congress' use of the phrase "and then only" indicates an intent to link together all of the restrictions, including the evidentiary restrictions, under the umbrella of the law enforcement data, so that the rider effectively states that ATF may only use the funds being appropriated to release data to law enforcement recipients "and then only" subject to the restrictions which follow. Congress commonly uses "and then only" when it seeks to provide serial restrictions, *i.e.*, imposing one restriction, and then applying further restriction to the originally limited subject. *See, e.g.*, 16 U.S.C. § 26 ("nor shall any fish be taken out of the waters of the park by means of seines, nets, traps, . . . or in any other way than by hook and line, *and then only* at such seasons and in such times and manner as may be directed by the Secretary of the Interior") (emphasis added).

The April 1, 2005 decision affirming the magistrate judge's interpretation of the 2005 rider suggested a reading of the phrase "such data" different from the above reading. In finding that the restrictions in the 2005 rider did not apply retroactively to bar disclosure of the missing trace data, the opinion was predicated on the assumption that these restrictions ("all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action") constituted a general ban on court-ordered disclosure of ATF trace data rather than a restriction on the use of data disclosed to law enforcement recipients. *Beretta*, 228 F.R.D. at 144. Because the ultimate determination was that any ban on court-ordered disclosure—whether narrow or broad—did not apply retroactively, *id.* at 145, it was not necessary to determine the scope of the ban at that time. Statements regarding the scope of the restrictions in the 2005 decision were dicta, not necessary to the decision. The court now explicitly rejects these statements and any others that imply a reading of the 2005 rider that is contrary to the reading of the relevant phrases of the 2006 rider set forth in this memorandum and order.

### 2. Application of Law to Facts

The evidentiary restrictions in the 2006 rider require that "such data" be inadmissible in evidence and prohibit its use "in any civil action pending on or filed after" the effective date of the 2006 appropriations act. The present case is a civil action that was pending on the effective date of the appropriations act. Because the phrase "such data" refers to data to be revealed in future disclosures to law enforcement recipients, the evidentiary restrictions are not designed to be applied to, and cannot be read to apply to, the trace data already disclosed to the parties and sought to be admitted in this case.

### B. Congressional Policy Towards the Administration of Justice

The present construction of the 2006 rider is supported by an examination of congressional policy towards the administration of justice as displayed in Federal Rule of Evidence 102. That rule, adopted by Congress in 1975, requires that the Federal Rules of Evidence "be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence *to the end that the truth may be ascertained and proceedings justly determined*" (emphasis added). *See also* Fed.R.Civ.P. 1 ("These rules ... shall be construed and administered to secure the *just, speedy, and inexpensive determination of every action.*") (emphasis added); *Beretta*, 228 F.R.D. at 137 ("[It is] a fundamental of federal jurisprudence that, within reasonable limits, civil litigants be able to discover the facts relating to arguably valid claims and defenses. Courts cannot adjudicate fairly unless their judgments are based on available evidence. It cannot be assumed ... that Congress is unaware of these fundamental principles.")

If the 2006 rider were read to bar the use of the data already long available for use in this case, it would inhibit the truth-seeking process for no rational reason and interfere with the fair determination of this action. Because the data has already been disclosed, there can be no concern about expenditure of funds or of effort on the part of ATF or others. On the contrary, applying the rider to bar the data in this case would in fact increase the costs of this lawsuit for all of the parties, since the City would almost undoubtedly move for— and would be entitled to—an opportunity to conduct further discovery in order to

develop other evidentiary grounds for its case. *See* Pl.'s Mem. at 2, 5.

Nor is there any concern here about interference with the ATF's ability to collect data or with law enforcement agencies' ability to investigate and prosecute criminal activity involving firearms. Even assuming that disclosure and use of the trace data would somehow disrupt these programs—an assumption with no basis in fact—that disruption must already have occurred in this case, since the data has already been gathered, disclosed to the parties, and analyzed at great length. There can be no concern about future disruption caused by testimony and exhibits introduced at trial: such testimony or exhibits could be sealed by the court or otherwise limited to protect the integrity of any ongoing investigation while still allowing the ends of justice to be served.

The language of the 2006 rider does not require its application to the data at issue here. There is no reason to construe this budgetary provision more broadly than necessary—a construction requiring the assumption that Congress was acting irrationally and in opposition to its long-standing policy regarding the administration of justice. *Cf. Pierce County v. Guillen,* 537 U.S. 129, 144, 123 S.Ct. 720, 154 L.Ed.2d 610 (2003) ("statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for truth") (citing *St. Regis Paper Co. v. United States,* 368 U.S. 208, 218, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961); *Univ. of Penn. v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990)); *Baldrige v. Shapiro,* 455 U.S. 345, 360, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982) ("A statute granting a privilege is to be strictly construed so as to avoid a construction that would suppress otherwise competent evidence.").

### C. Legislative History

The evidentiary restrictions were placed in the 2006 rider with no debate. *See, e.g.,* Laurie P. Cohen & Vanessa O'Connell, *New Legislation Could Scuttle Gun–Crime Suit,* Wall St. J., Jan. 18, 2006, at B1. As a result, there is no legislative history concerning the new language.

The only reference in the legislative history to the 2006 rider describes the entire provision and supports the construction of the rider set forth in this memorandum and order. The House Report states that "[t]he Committee recommends bill language, included in fiscal year 2005 and in the budget request, that ... prohibits *funds from being used* to disclose certain firearms trace data." H.R.Rep. No. 109–118, Science, State, Justice, Commerce, and Related Agencies Appropriations Bill, Fiscal Year 2006 (emphasis added).

### D. *City of Chicago v. Department of the Treasury*

In support of their contention that "such data" refers to all ATF trace data, defendants rely on the decision of the Court of Appeals for the Seventh Circuit in *City of Chicago v. Dep't of the Treasury,* 423 F.3d 777 (7th Cir.2005). *See* Defs' Mem. at 4. The court has read the decision with interest. It most respectfully disagrees with the conclusion of the Court of Appeals for the Seventh Circuit in that case and is somewhat dubious that the result would have been the same if the facts in that case, as in the instant case, involved data already disclosed to the parties in a trial-ready litigation.

*City of Chicago* involved an attempt by the City of Chicago to obtain certain ATF trace data by means of a Freedom of Information Act ("FOIA") request. ATF maintained that this data was barred from court-ordered disclosure by the restrictions on legal process and subpoena in the 2005 rider ("all such data shall be immune

from legal process and shall not be subject to subpoena or other discovery in any civil action"). A panel of the Court of Appeals for the Seventh Circuit agreed, denying the City of Chicago's request for future release of that data.

In holding that the restrictions in the 2005 rider barred court-ordered disclosure of the ATF trace data requested by the City of Chicago, the Court of Appeals for the Seventh Circuit concluded that the phrase "such data" had to refer to all ATF trace data, since the rider's general description of that data was the only possible antecedent for the phrase. *Id.* at 780–81 ("[t]he only data mentioned in the paragraph prior to the reference to 'such data' is the tracing data").

Contrary to the Seventh Circuit's reading, there are in fact two grammatically possible antecedents to the phrase "such data" in both the 2005 and the 2006 riders. "Such data" could, as *City of Chicago* concluded, refer to the more general description of the ATF trace data in the first few lines of the riders, but, as already noted above, it could also refer to the data to be revealed in future disclosures to law enforcement officials. For the contextual and grammatical reasons already explained, the latter is the more appropriate antecedent to "such data."

It must be observed that while the Court of Appeals for the Seventh Circuit's statutory interpretation was given in general terms, its conclusion could well have been influenced by the facts of the case before it. *City of Chicago* did not involve data that was already disclosed, analyzed, and ready to be used at trial. None of the data requested in that case had been disclosed on the effective date of the 2005 rider. The City of Chicago sought to obtain the data under a general FOIA request, while here the data has been obtained by explicit order of the court supervising discovery. As interpreted to bar the data at issue in the Chicago case, the 2005 rider constituted significantly less of an interference with the proper administration of justice than a similar interpretation of the 2006 rider would in the present case. Here, the proverbial cat is already out of ATF's bag, and requires no further feeding or government care. It would make no sense to distort the terms of a federal budgetary measure in order to wrestle the cat back in.

## VI.   Conclusion

The evidentiary restrictions in the 2006 rider cannot be read to encompass the trace data already in the City's possession and sought to be admitted in this pending case. The rider does not prevent the City's action from proceeding. There is no need to consider any constitutional issue.

This case involves an interlocutory order not otherwise appealable. There is a substantial ground for disagreement about a controlling issue of law—the applicability of the 2006 rider to the present litigation— and an immediate appeal may substantially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

The stay of proceedings previously imposed and lifted by the court is reimposed.

SO ORDERED.